544 P.2d 219
**The STATE of Arizona, Appellee,**
**v.**
**John Leon WHITAKER, Appellant.**
**No. 3252.**

Supreme Court of Arizona,
In Banc.
Dec. 22, 1975.

Rehearing Denied Jan. 27, 1976.

**538**

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Ronald L. Crismon, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Garth V. Smith, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal by John Leon Whitaker from a jury verdict and judgment of guilt of the crime of assault with a deadly weapon, a gun, A.R.S. §§ 13–241 and 249, and sentence thereto of not less than five nor more than seven years in the Arizona State Prison, said sentence to run concurrently with an identical sentence imposed as a result of a probation revocation hearing in a separate case.

Defendant raises three issues on appeal:

1. Did the court err in allowing defendant's wife to testify as a prosecution witness over defendant's objection?

2. Did the prosecuting attorney in his closing argument make improper references to defendant's failure to testify?

3. Did the trial court give improper and misleading instructions to the jury on the law of self-defense?

The facts necessary for a determination of this appeal are as follows. Defendant and Rosalynd Whitaker were married in 1969 and had one child, a daughter, Shawn. They began experiencing marital difficulties in 1971 and about one and one-half years after their marriage they separated. On 22 February 1972, Rosalynd Whitaker filed a complaint requesting a judgment of separate maintenance, which was grant-

ed by order dated 7 April 1972. In January 1974 Rosalynd filed an action for divorce, but she withdrew her petition the same month, assertedly because she wanted her husband to have no visitation rights and could not afford the attorney's fees necessary to obtain such an order.

At the time of the incident in question, Rosalynd and her daughter were living in a duplex apartment in Tempe, Arizona, with the alleged victim, Steve Sylvester. The apartment was rented in Rosalynd's name. At trial, Rosalynd asserted that her intention was to marry Sylvester as soon as she obtained a divorce from defendant and that she and Sylvester had been living together approximately one and one-half years at the time of the shooting and had been living in the apartment eight or nine months.

At approximately 5:45 p. m. on 22 June 1974, defendant arrived at his wife's apartment and knocked on the front door. Rosalynd, Shawn, and Sylvester were all inside the apartment. When no one acknowledged defendant's knock, he began to pound and kick at the door, while yelling "telegram." Meanwhile, Rosalynd went into the hallway to telephone the police. At that point, defendant went around to the rear door of the apartment and attempted to open it by turning the doorknob. Apparently finding the door locked, defendant broke the glass window and reached through with his hand, in which he held a pistol. Sylvester meanwhile had picked up a 16 gauge shotgun which had been purchased by Rosalynd Whitaker earlier that afternoon. There is no question that defendant fired four shots into the apartment striking no one and that Sylvester fired once, striking defendant and seriously wounding him in the right shoulder, although the order of the shots was disputed. At trial, Rosalynd and Sylvester testified that defendant fired one or two shots before Sylvester fired his gun; defendant's story, as related to Police Officer Metcalf, was that Sylvester fired first wounding the defendant in the right shoulder and then

he, the defendant, pulled out his gun with his right hand and returned the fire.

Defendant was tried before a jury and found guilty. He now appeals.

## ANTI–MARITAL FACT PRIVILEGE

Defendant argues that the court erred in allowing his wife to testify, over his objection, as a witness for the State.

At common law, the husband or wife of a party was incompetent to testify either for or against the party-spouse. This marital incompetency had two aspects, each supported by a distinct policy consideration. 8 Wigmore Evidence, McNaughton rev. 1961, § 2227; McCormick, Evidence 2nd Ed. 1972, § 66. In virtually all jurisdictions, including Arizona, the disqualification of an individual to testify in favor of his or her spouse, which was closely tied to the incompetency to testify of a party, has been abolished. See *Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933); Wigmore, supra, § 2245; McCormick, supra, § 66; also see A.R.S. § 13–1802. However, in many jurisdictions the second aspect of the marital incompetency, which is in effect a privilege held by one or both of the spouses, has been maintained.

Our statute reads as follows:

*"Anti-marital fact privilege;*

"A person shall not be examined as a witness in the following cases:

"1. A husband for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, be, without consent of the other, examined as to any communication made by one to the other during the marriage. These exceptions do not apply in a criminal action or proceeding for a crime committed ·by the husband against the wife, or by the wife against the husband, nor in a criminal action or proceeding against the husband for abandonment, failure to support or provide for or failure or neglect to furnish the

necessities of life to the wife or the minor children. Either spouse may, at his or her request, but not otherwise, be examined as a witness for or against the other in a prosecution for bigamy or adultery, committed by either spouse, or for rape, seduction, the crime against nature or any similar offense, committed by the husband." A.R.S. § 13–1802(1).

■ The anti-marital fact privilege, as distinguished from the privilege for confidential communications between a husband and wife, see A.R.S. § 12–2232, exists only during marriage and under Arizona law gives a criminal defendant, except in enumerated types of cases, an absolute right to prevent his or her spouse from being called as a witness. We have stated:

"Section 13–1802 A.R.S. deals with two separate and distinct concepts: incompetency of one spouse as a witness for or against the other, and the privilege held by one spouse which prevents adverse testimony by the other both during and after the marriage. The incompetency portion of our statute operates to absolutely disqualify a spouse as a witness for or against the other without his or her consent. The proscription applies only so long as the parties are married." *State v. Drury,* 110 Ariz. 447, 451, 520 P.2d 495, 499 (1974).

The rationale for this rule has been variously stated, but in essence is two-fold: First, it is felt that the privilege is necessary to support the peace and tranquility of families and to protect the marital relation. See e. g., *Hawkins v. United States,* 358 U. S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958).

Our statute rests upon such considerations. A.R.S. § 44–2702, Code of 1939, the predecessor statute to A.R.S. § 13–1802, was prefaced with the statement that "[t]here are particular relations in which it is the policy of the law to * * * preserve it inviolate; * * *." The Reviser's Note to A.R.S. § 13–1802 states that the provision just quoted was "deleted as unnecessary." Also see *Zumwalt v. State,* 16 Ariz. 82, 141 P. 710 (1914).

An alternative rationale has been stated as follows:

"A second reason, * * * [is] that there is a *natural repugnance* in every fair-minded person to compelling a wife or husband to be the means of the other's condemnation, and to compelling the culprit to the humiliation of being condemned by the words of his intimate life partner." Wigmore, *supra,* § 2228 at 217.

However, desirable the above policies may be in the abstract, anti-marital fact privilege has been sharply criticized by a number of writers. McCormick discusses the privilege as follows:

"The privilege has sometimes been defended on the ground that it protects family harmony. But family harmony is nearly always past saving when the spouse is willing to aid the prosecution. The privilege is an archaic survival of a mystical religious dogma and of a way of thinking about the marital relation that is today outmoded." (footnotes omitted) McCormick, supra, § 66 at 145–146.

And Wigmore strongly argues for the total abolition of the privilege:

"This privilege has no longer adequate reason for retention. In an age which has so far rationalized, depolarized and dechivalrized the marital relation and the spirit of femininity as to be willing to enact complete legal and political equality and independence of man and woman, this marital privilege is the merest anachronism in legal theory and an indefensible obstruction to truth in practice. It is unfortunate that the United States Supreme Court, when handed the opportunity in 1958, failed to eliminate this relic from the impediments to justice in the federal courts: * * *" Wigmore, supra, § 2228 at 2221.

Nevertheless, the privilege remains in effect in Arizona and this court is bound to enforce it until such time as it is modified or abolished by the legislature. The parties being, in fact, man and wife, the admissibility of the wife's testimony must be based upon some recognized exception to the general rule.

Under the common law disqualification, the wife of a defendant was allowed to testify in a criminal prosecution for a crime committed against the person of the wife. McCormick, supra, § 66 at 145. This exception has been considerably extended by statute or judicial interpretation. Our statute provides that the privilege is inapplicable:

"* * * in a criminal action or proceeding for a crime committed by the husband against the wife or by the wife against the husband, nor in a criminal action or proceeding against the husband for abandonment, failure to support or provide for or failure or neglect to furnish the necessities of life to the wife or the minor children. * * *" A.R.S. § 13–1802.

We have stated:

"The testimony clearly shows that the reasons for not permitting a wife to testify against her husband are not present in the instant case because it had already been agreed that the marital relationship would be terminated. Brenda and her daughter were living with her parents and defendant had agreed to a divorce. Her father and brother had gone to assist in getting Brenda's things to take them home. They were helping her in getting her belongings at the time of the shooting. So, we are confronted with the question whether the killing of the wife's father and brother under these circumstances was a crime committed by the husband against the wife. We feel there is no distinction between the principle of law involved in this case and that enunciated in *O'Loughlin v. People*, supra, 90 Colo. 368, 10 P.2d 543, 82 A.L.R. 622, and in *Chamberlain v. State*, supra, Wyo., 348 P.2d 280, holding that a crime committed against the spouse's child was a crime committed against the other spouse.

"We therefore hold that the testimony of Brenda was admissible against her husband in the murder charges, * * *." *State v. Crow*, 104 Ariz. 579, 586, 457 P. 2d 256, 263 (1969).

In the instant case, the court in admitting the testimony of the wife stated:

"THE COURT: The Court will allow the witness Rosalynd Whitaker to testify concerning the incidents on the night in question, including those acts entered into by her husband that culminated in the shooting.

\* \* \* \* \* \*

"THE COURT: For the purpose of the record, I am basing my decision not on their marital status—I find they are still married, they are separated, and that she would probably testify there are irreconcilable differences; but by decision is based on the fact that the harm perpetrated by her husband is a harm to her within the concept of *Crow*.

The New Jersey court in a case wherein the defendant was charged with the murder of his wife's lover and with an atrocious assault and battery upon his wife, both charges growing out of a single incident, stated:

"* * * If there is a single criminal event in which she and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident and formal charges are made against the husband for some or all the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding. And, in this connection, it should be immaterial that the offense against the wife does not reach the same dimensions of criminality as it does against the third-party victim." *State v. Briley*, 53 N.J. 498, 507, 251 A.2d 442, 446 (1969).

And:

"* * * On principles of public policy it is much more important in situations like the present case to make the wife's testimony available than to cloak it with the anachronistic restraint of the common law. * * * As we have already stated above, it is wholly consistent with

the quest for truth and with present-day standards of achieving justice to regard the wife's testimony in situations like the one now before us as competent and compellable against the defendant-husband. Thus, in view of subsection (b) of the rule, the requirement for a spouse's consent mentioned in subsection (a) must be regarded as applicable only to a criminal proceeding in which the wife's role is strictly that of a witness, as distinguished from that in which she is a victim or an intended victim, or one victim in a unitary event in which her husband is a criminal actor." Id., 53 N.J. at 509, id. 251 A.2d at 448.

■ Mrs. Whitaker and her child were potential victims of defendant's assault. The evidence is sufficient from which the trial court could find that Mrs. Whitaker and her daughter were endangered by the gunfire. We will not find that the trial court abused its discretion in so holding where the ruling is reasonably supported by the facts.

## PROSECUTOR'S STATEMENTS

In his closing argument, the prosecuting attorney made the following remarks:

"You heard it from the witness-stand. You also heard something else. You heard Stephen Sylvester take this witness-stand and tell you that he was positive that the way he was telling you was the way it happened.

\* \* \* \* \* \*

"But nonetheless you must consider her testimony, another person who sat there, and told you that, as they recall it, the smaller gun, the gun the defendant had, fired first.

\* \* \* \* \* \*

"And this defendant, through Officer Metcalf's statements that he made to Officer Metcalf, is asking you to believe that after he received massive wounds from a 16-gauge shotgun he reached into his belt, pulled out a gun and then fired.

\* \* \* \* \* \*

"He received them in the very same arm and shoulder that he is telling you,

through Officer Metcalf, that he told Officer Metcalf, he fired the gun with.

\* \* \* \* \* \*

"And even if you accept the defendant's story, fire into a house that he can't see into?"

On the basis of the above language, defendant, who did not testify, moved for a mistrial arguing that the statements constituted improper and prejudicial comments upon his failure to take the stand.

■ A defendant in a criminal case has an absolute right not to testify, and the prosecution is forbidden to comment on a defendant's exercise of that right. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Rhodes,* 110 Ariz. 237, 517 P.2d 507 (1973). We have stated:

"\* \* \* the Fifth Amendment is violated only if the statements will call the jury's attention to the fact that defendant has not testified in his own behalf. (citations omitted)" *State v. Pierson,* 102 Ariz. 90, 91, 425 P.2d 115, 116 (1967). See also *State v. Karstetter,* 110 Ariz. 539, 521 P.2d 626 (1974).

■ We do not believe that these statements were improper comments upon defendant's exercise of his Fifth Amendment rights. The refusal to grant a mistrial was not error.

## SELF-DEFENSE INSTRUCTIONS

The trial court instructed the jury on the issue of self-defense including the following:

"One who is in a place where he has no right to be may *not* claim self-defense when by leaving such place he might avoid the conflict."

The court further instructed the jury as to the presumption of innocence and the requirement of proof beyond a reasonable doubt as follows:

"The state must prove that the defendant has done an act which is forbidden by law and that he *intended* to do it. You may determine that the defendant *intended* to do the act if he did it voluntarily. The state does *not* have to prove that the

defendant *knew* the act was forbidden by law.

\* \* \* \* \* \*

"The law does not require a defendant to prove his innocence. He is presumed by law to be innocent. This means the state must prove all of its case against the defendant.

"The state must prove the defendant guilty beyond a reasonable doubt."

Defendant objected generally to the giving of all of the State's requested instructions, including those quoted above, however, he set forth no specific grounds for objection and offered no substitute instructions.

After deliberating several hours, the jury submitted to the court the following question:

"Did the defendant have the right to be on the premises at which the incident occurred? If yes, why? If no, why?"

The court replied as follows:

"Ladies and gentlemen, you have before you all the evidence that will be presented and all the instructions on the law that will be given."

■ Defendant now contends that the "instructions regarding self-defense, taken as a whole, were misleading and did not correctly state the law." However, as we noted above, defendant failed specifically to state the grounds for his objection to the giving of those instructions. Consequently, he has waived his right to complain on appeal under Rule 21.3(c), Arizona Rules of Criminal Procedure 1973, which provides as follows:

"c. *Waiver of Error.* No party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof or to the submission or the failure to submit a form of verdict unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

■ However, reading the instructions as a whole, we still find no error. It may be that the jury was in doubt as indicated by the jury's questions while deliberating, but to have tried to answer their question adequately may well have resulted in further error as a comment on the evidence. We feel that the judge adequately set forth the presumption of innocence and the requirement of proof beyond a reasonable doubt in his general instructions and there was no prejudice to the defendant. *Macias v. State,* 36 Ariz. 140, 283 P. 711 (1929). It is not error to refuse a defendant's requested instruction when the same subject matter is adequately covered by other instructions. *State v. McIntyre,* 106 Ariz. 439, 477 P.2d 529 (1970); *State v. Brooks,* 103 Ariz. 472, 445 P.2d 831 (1968).

■ Although defendant asserts that he went to his wife's apartment to see his daughter, there clearly was sufficient evidence from which the jury could have concluded that he was a trespasser. The issue of the duty to retreat on the part of one wrongfully on the premises was thus properly before the jury. That the jury requested additional instructions does not necessarily indicate that it was "confused" by the instructions that were given.

■ Finally, defendant contends that the underscoring of the word "not" in the phrase "One who is in a place where he has no right to be may *not* claim self-defense \* \* \*" gave undue emphasis to the instruction, thereby compounding its prejudicial effect. Again we disagree. The court made liberal use of underscoring throughout its instructions to the jury, as can be seen from those portions quoted above. These instructions were taken into the jury room by the jury. While the use of underscoring to emphasize crucial language in jury instructions can serve to clarify instructions, we feel that there is danger in the practice and it is not recommended. In the instant case we find no error.

Affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.