550 P.2d 630

The STATE of Arizona, Appellee,

v.

Michael O'Day MATTOX, Appellant.

No. 3291.

Supreme Court of Arizona,
In Banc.

June 7, 1976.

---

Arizona State Prison for the crime of first degree murder. All of the sentences were concurrent and commenced on the date of his arrest, 17 October 1974.

We must answer the following question: Did the trial court err in failing to suppress defendant's confession?

The facts necessary for a determination of this matter on appeal are as follows. Michael Paul Smear was found strangled to death in his trailer located at 2200 West Van Buren in Phoenix on 11 October 1974. Police officers discovered Smear's body lying on his bed with a knotted pillowcase tied around his neck. The victim's wallet, a number of guns, and his motor vehicle, a Ford Ranchero pickup, were missing. The fingerprints of Michael O'Day Mattox, a juvenile approximately 17 years and 11 months old, were found inside Smear's trailer and motor vehicle which was subsequently recovered near 20th Avenue and Polk.

Police Officer Robert Calleo, who is assigned to the Homicide Detail, went to the home of Michael Mattox at 9:05 a. m. and informed him, in the presence of his mother and father, that they were going to take him to the police station to discuss the death of Michael Smear, compare fingerprints and take photographs. At this time, neither Mattox nor his parents were advised that he was a homicide suspect. Mattox was not accompanied by his parents to the police station. Prior to questioning Mattox, Officer Calleo read him the Miranda warnings from the standard rights card issued to all police officers. Mattox signed the rights card, stated that he understood his rights, and voluntarily agreed to answer questions.

Officers Calleo and Aurelius then questioned Mattox for two and one-half hours. After approximately two hours of interrogation, Mattox was advised that he was under arrest for burglary, grand theft, and murder. Twenty minutes later Mattox admitted killing Smear.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Rudolph J. Gerber, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal from a judgment of guilt to two counts of burglary, A.R.S. § 13–302; grand theft, § 13–661 and § 13–663; theft of a motor vehicle, A.R.S. § 13–672(C); and first degree murder, A.R.S. § 13–452. As punishment for theft of a motor vehicle, a misdemeanor, defendant was sentenced to time served in the Maricopa County Jail, and he was given a sentence of not less than three years nor more than four years on each of the burglary counts and on the grand theft count. Defendant was sentenced to life in prison without possibility of parole until he has served 25 calendar years at the

In an information filed 8 January 1975, Mattox was charged with the first degree murder of Smear, burglary of Smear's trailer, grand theft, theft of a motor vehicle, and a separate burglary, on another date, of the Palmcroft Baptist Church. The defendant agreed to submit the issue of his guilt or innocence to the court on the basis of preliminary hearing transcripts and police reports. On 23 April 1975, Mattox was found guilty of all counts, except he was found not guilty of theft of a motor vehicle, a felony, A.R.S. § 13–672(A), but was found guilty of theft of a motor vehicle, a misdemeanor, A.R.S. § 13–672(C). From these judgments of guilt defendant appeals.

Mattox argues that the trial court erred by failing to suppress his confession. We disagree. Rule 18 of the Rules of Procedure of Juvenile Court, 17 A.R.S., reads as follows:

*"Statement of a Child*

"No extra-judicial statement to a peace officer or court officer by the child shall be admitted into evidence in juvenile court over objection unless the person offering the statement demonstrates to the satisfaction of the court that: The statement was voluntary and before making the statement the child was informed and intelligently comprehended that he need not make a statement, that any statement made might be used in a court proceeding, and that he had a right to consult with counsel prior to making a statement and during the taking of the statement, and that, if he or his parents, guardian or custodian could not afford an attorney, the court would appoint one for him prior to any questioning."

And we have stated:

"We hold that Rule 18, *supra,* sets the standards for the admission of the statement of a child. The presence of the child's parents or their consent to a waiver of rights is only *one* of the elements to be considered by the trial court in de-

termining that the statement was voluntary and the child intelligently comprehended his rights. To the extent that this position deviates from *State v. Maloney,* [102 Ariz. 495, 433 P.2d 625], *supra,* that decision is overruled." *State v. Hardy,* 107 Ariz. 583, 584, 491 P.2d 17, 18 (1971).

Mattox was nearly eighteen years of age at the time of his interrogation, had completed nine grades of education, and exhibited average intelligence at his voluntariness hearing. Although defendant was questioned for two and one-half hours by two officers, we see no evidence to indicate that defendant's statements were the product of promises of leniency, threats, or coercion. Our examination of the record and the facts of this case indicate that Mattox understood his rights and that his statements to Officers Calleo and Aurelius were voluntary. We believe the following to be dispositive:

"We consider now appellant's contention that Taylor was a frightened, ignorant child subjected to vigorous questioning and badgering by experienced police officers over a period of seven hours without sleep or food. Taylor's own testimony indicates that he rose from his bed at 4:00 p. m. on the 19th of December, 1970, only some seven hours prior to the discovery of the fire. Our previous recital indicates that the questioning was long (almost seven hours) and eight police officers and a fire department official at one time or another talked to and interrogated the appellant. However, we are impressed by the fact that despite this alleged overwhelming atmosphere, the appellant never confessed to anything. He continued through an ever-changing pattern of fabrications to protest his innocence, and ultimately volunteered to take a lie detector test. In fact, the inconsistencies which pervaded Taylor's statements up to the time Officer Adams read him his Miranda rights were of greater significance than

subsequent statements. The lack of food and sleep arguments are not borne out by the facts.

"We find ourselves in the same position as was the California Supreme Court in *People v. Lara, supra,* [67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202], which found on the basis of all the testimony that the defendant had the capacity to understand his rights and the effect of a waiver of those rights.

"Our examination of the record convinces us that Taylor's statements were voluntarily made." *State v. Taylor,* 112 Ariz. 68, 81–82, 537 P.2d 938, 951–52 (1975).

We find no error.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.