555 P.2d 650

**STATE of Arizona, Appellee,**

v.

**Robert Lee TONEY, Appellant.**

No. 3209.

Supreme Court of Arizona,
En Banc.

Sept. 24, 1976.

Bruce E. Babbitt, Atty. Gen., Phoenix, by Heather A. Sigworth, Asst. Atty. Gen., Tucson, for appellee.

Albert R. Gamble, Tucson, for appellant.

HAYS, Justice.

This is an appeal from a conviction of murder in the second degree returned by a

jury on May 2, 1975, and a sentence of sixty years to life, imposed on June 13, 1975. We have jurisdiction pursuant to the Arizona Constitution, art. 2, § 24, art. 6, § 5, and Arizona Revised Statutes, §§ 12–120.21(A)(1) and 13–1711.

Appellant was fifteen years old when he and his codefendant, Jerry Thomas, were arrested for the brutal beating murder of an alleged homosexual. He was remanded to adult court and tried there.

Eyewitness testimony at trial revealed that the beatings began with a fight outside the V.F.W. Club, a teen hang-out in Tucson. During this fight, both Thomas and appellant, and possibly others, overcame the victim. Further eyewitness testimony, as well as testimony from defense witnesses, including appellant, established that appellant and Thomas then carried the already badly beaten victim to the victim's own car, loaded him in the back seat and drove off with him.

The victim was later found by police in a desert area next to a school. The body, still burning, had been nearly incinerated by appellant and three other companions, not including the codefendant Thomas. However, medical testimony established the cause of death as "massive skull fracture with diffused brain hemorrhage." The results of another test showed that the victim was dead before his body was burned.

Appellant's own testimony revealed that he and the three others had gone there to destroy the body after appellant and codefendant had parted. There was testimony that this was not appellant's idea, but the idea of one of the other boys.

Appellant took the stand in his own behalf and testified, in essence, that after they left the V.F.W. with the victim, his codefendant, Thomas, became uncontrollably violent and that it was he, not appellant, who continued beating the victim in *the car and after at the schoolyard*, until the victim succumbed. Appellant testified that he tried to stop Thomas several times, incurred a severe blow to the head himself

in so doing, but because of Thomas' rage, he was unsuccessful in preventing the murder.

Codefendant Thomas took the stand for the defense also, and, in essence, exonerated appellant with a similar story. He had already pled guilty to murder in the second degree and had begun serving his sentence of 30 to 50 years. Thomas' testimony was, however, impeached through the use of a statement he had given the police shortly after the murder, which placed the entire blame for the beating on appellant.

Appellant's testimony was also disputed by the introduction into evidence of a taped statement given by him to police shortly after his arrest.

The questions appellant raises on appeal are these:

1. Did the trial court err in failing to suppress appellant's inculpatory admissions?

2. Did the trial court err in refusing to give an instruction, requested by defense, on aggravated assault?

3. Was the verdict contrary to the weight and sufficiency of the evidence?

4. Was the sentence imposed cruel and unusual, or excessive, under the circumstances?

### FAILURE TO SUPPRESS

Appellant contends that three factors combine to make his statements involuntary: (1) his physical impairment caused by the blow to his head, (2) his tender age, and (3) the coercive effect of a police officer's remark to appellant that others involved had already given statements so that he too may as well tell his story.

It is not contended that appellant was not read the Miranda warnings. They were read to him both at the scene of the arrest and before the statement was taken. The concern is with whether, under the circumstances, appellant understood the rights, and whether they were freely and intelligently waived.

The constitutional privilege against self-incrimination applies to juveniles. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Nowhere is it suggested in *Gault,* however, that a juvenile cannot make a voluntary statement to police. The test, in Arizona, to determine whether a juvenile has made a voluntary statement is the "totality of circumstances" test, as it is with adults. Arizona Rules of Procedure for Juvenile Court, Rule 18; *State v. Taylor,* 112 Ariz. 68, 537 P.2d 938 (1975), *cert. denied,* 424 U.S. 921, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976); *State v. Mattox,* 113 Ariz. 252, 550 P.2d 630 (1976). A minor has the capacity to make voluntary inculpatory statements, even of capital offenses, without the presence or consent of counsel or other responsible adult, and the admissibility of such a statement depends not on his age alone but on a combination of that factor with other circumstances, including his intelligence, education, experience and ability to comprehend the meaning and effect of his statement. *People v. Lara,* 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967), *cert. denied,* 392 U.S. 945, 88 S.Ct. 2303, 20 L. Ed.2d 1407 (1968); *West v. United States,* 399 F.2d 467 (5th Cir. 1968), *cert. denied,* 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795 (1969).

At the suppression hearing, the trial court heard testimony from the police officers who took appellant's statement. They indicated that appellant was read his rights at least twice and said he understood them; that his mother, although not read the rights, was informed her son was under arrest for murder and where he would be taken if she wanted to come there or obtain an attorney for him; that appellant began to talk quickly and cooperatively right after being informed of his rights; that he never indicated he did not want to discuss the event with the police; that he never complained about his head injury or feeling ill; and he never indicated he wanted to talk to an attorney or his mother.

There was also testimony before the court that appellant had completed the tenth grade in school, had prior contact with the Miranda warnings because of previous arrests, was of normal intellectual capacity and, in fact, was probably above normal. The appellant, on cross-examination, admitted he did well in school, had had at least seven hours of sleep before the morning when he was arrested, and that he was advised that because of the type of crime he was arrested for he could be sent to adult court.

Finally, the court listened to the taped statement itself and, among other things, heard the remarks appellant made about his head injury. The court concluded thereafter that the statement was made voluntarily, intelligently and without force or duress.

After reviewing the entire record, we agree. The trial judge's determination that a statement is voluntary and admissible will not be disturbed on appeal unless there is clear, manifest error. *State v. Sanders,* 101 Ariz. 410, 420 P.2d 281 (1966); *State v. Edwards,* 111 Ariz. 357, 529 P.2d 1174 (1975). We hold there was no error in failing to suppress the statement.

## FAILURE TO INSTRUCT ON AGGRAVATED ASSAULT

During the struggle at the V.F.W. Club, appellant was seen to have given the victim a severe kick in the head. However, the victim was not unconscious when taken away in the car. There was testimony that he sat up in the back seat but was pushed back down, by appellant, as they drove off.

Appellant's contention is that, based on the kick to the victim's head, he was entitled to an instruction on aggravated assault, in addition to the instructions given on murder in the first and second degrees. He argues that his own testimony established an element of the "lesser included offense" of aggravated assault. That may

very well be true. However, we have previously ruled on this point, saying:

"While an assault and battery are always included in an unlawful homicide, they are not degrees of such offense requiring the court where death results to instruct that the defendant may be found guilty thereof." *State v. Myers,* 59 Ariz. 200, 208, 125 P.2d 441, 444 (1942).

*See also State v. Contreras,* 107 Ariz. 68, 481 P.2d 861 (1971).

Both appellant and his codefendant, Thomas, testified that the victim was alive when they arrived at the schoolyard. In fact, he made one last, futile effort to escape. They both also testified that he was then administered the fatal beating with a lamp and a piece of rock that was there in the schoolyard. Medical testimony established that the victim's skull was virtually broken in half.

 Instructions on lesser offenses are justified only when there is evidence upon which the jury could convict of a lesser offense and, at the same time, find that the state had failed to prove an element of the greater crime. *State v. Schroeder,* 95 Ariz. 255, 389 P.2d 255 (1964), *cert. denied,* 379 U.S. 939, 85 S.Ct. 347, 13 L.Ed.2d 350 (1964); *State v. Hatten,* 106 Ariz. 239, 474 P.2d 830 (1970). Instructions on lesser offenses are not justified if the state of the record is such that the defendant can only be guilty of the crime charged, or not at all. *State v. Schroeder, supra; State v. Hatten, supra; State v. Ballinger,* 110 Ariz. 422, 520 P.2d 294 (1974). We cannot say that the jury could have convicted the appellant of aggravated assault and, at the same time, found that the state had failed to prove an element of murder, first or second degree. If the jury had believed the appellant's testimony, and his trial theory of "withdrawal," their only proper verdict would have been not guilty.

 Finally, appellant has waived his objection to the failure to give his requested instruction. 17 A.R.S., Rules of Crimi-

nal Procedure, rule 21.3(c), specifies that objections to the giving of an instruction, or failure to give one, must state "distinctly the matter to which he objects and the grounds of his objection." The record reveals only the following objection by appellant's counsel when the court refused his instruction:

"Your Honor, despite that, I think Defendant's 8, of course, is an adequate and proper instruction. I would want the record to reflect my objection. . . . ."

There is no authority cited on the written instruction as a basis for giving it; none is given orally. No further objection was made to the failure to give it. Failure to specifically state the grounds for objections to instructions, or the failure to give them, waives the right on appeal. *State v. Whitaker,* 112 Ariz. 537, 544 P.2d 219 (1975).

For the above reasons, we hold that the trial court did not err in refusing to give the requested instruction on aggravated assault.

## VERDICT CONTRARY TO WEIGHT AND SUFFICIENCY OF EVIDENCE

 In considering whether a verdict is contrary to the weight of the evidence, or not supported thereby, an appellate court does not decide whether it would reach the same decision but whether there was competent evidence to support the conclusion of the jury. *State v. Jacobs,* 110 Ariz. 151, 515 P.2d 1171 (1973); *State v. Lemon,* 110 Ariz. 568, 521 P.2d 1000 (1974). Evidence is not insubstantial simply because testimony is conflicting or reasonable persons may draw different conclusions from the evidence. *State v. Ballinger, supra.*

 Appellant contends that there was never any question as to whether or not Jerry Thomas actually administered the fatal blows and that all the statements, reports and prosecution witnesses testified to

this end. We disagree. Introduced, by way of rebuttal, was a statement by Jerry Thomas, given when first arrested, indicating that appellant was the perpetrator of the beatings.

Additionally, the defense theory of "withdrawal from the conspiracy" was based solely on appellant's and Jerry Thomas' testimony, which could be believed or disbelieved by the jury.

Also before the jury were appellant's own admissions that he suggested that they remove the victim's shoes so he couldn't escape and that he helped conceal the body, not to mention his return to the scene later to burn the body.

From this testimony a jury could reasonably conclude appellant was guilty of murder in the second degree as a principal. We will not disturb its conclusions when there is substantial evidence to support its position. *State v. Godinez,* 111 Ariz. 397, 531 P.2d 154 (1975).

### EXCESSIVE SENTENCE

Appellant contends that several factors combine to make his sentence of sixty years to life not only excessive, but cruel and unusual. He points out that Jerry Thomas, the "admitted" perpetrator, received a less severe sentence; that evidence presented at trial showed appellant made a concerted effort to stop the beating; and that, being only sixteen years old when sentenced, appellant will be incarcerated throughout his youth.

 Appellant fails to point out, however, that the sentencing judge had before him a youth properly convicted, as we have decided, of a heinous crime. That judge had the opportunity to see and hear the appellant at trial and during sentencing. He had before him letters from the appellant, appellant's mother and a few acquaintances of the youth, the only items submitted by the defense in the way of mitigation. There was no mitigation hearing requested or held.

Before it, also, the court had a long prior record of appellant's involvement with crime. There were reports before

him too, not the least of which was a psychological evaluation of the appellant made after a battery of tests were administered by qualified medical personnel. Appellant is therein described as a "sociopathic personality," an analysis "not given lightly" by the doctors. Appellant is also labeled "very dangerous," lacking "the internal controls and the emotional sensitivity necessary to limit violent acting-out." Succinctly, the report is probably sufficient, alone, to warrant the removal of appellant from society for a very long time.

The Arizona Supreme Court has consistently held that a trial court has wide discretion in sentencing, as long as it remains within the statutory limits and unless the sentence, under the circumstances, is so clearly excessive that there is an abuse of that discretion. *State v. Domme,* 111 Ariz. 464, 532 P.2d 526 (1975). After a thorough review of the entire record, we find no abuse of discretion, nor do we find the sentence to be cruel and unusual under the circumstances.

Judgment of conviction and sentence affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concurring.