No. 51,683

In the Interest of Roy D. Edwards, a Male Minor, *Appellant*, v. State of Kansas, *Appellee*.

(608 P.2d 1006)

Opinion filed April 5, 1980.

*Christopher P. Christian,* of Foulston, Siefkin, Powers, and Eberhardt, of Wichita, argued the cause, and *M. Kay Royse,* of the same firm, was with him on the brief for the appellant.

*Paul W. Clark,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Michael Barbara,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a juvenile waiver proceeding, brought under K.S.A. 1979 Supp. 38-808, to determine whether Roy D. Edwards, a minor, age 16, is a fit and proper person to be dealt with under the juvenile code. After an extensive evidentiary hearing, the district court waived juvenile jurisdiction and ordered that Edwards be criminally charged and tried as an adult. This appeal followed.

Edwards was charged in juvenile court with seven counts of felony theft (K.S.A. 1979 Supp. 21-3701), five counts of burglary (K.S.A. 21-3715), two counts of aggravated burglary (K.S.A. 21-3716), and two counts of first-degree murder (K.S.A. 21-3401). The charges stem from an alleged crime spree of Edwards and another juvenile, Kenny Crease, in August of 1979. The evidence presented at the hearing showed that the two juveniles committed a series of burglaries and thefts at a number of residences in Wichita during that month. There was evidence indicating that on August 30, 1979, in the course of a burglary at the Temple residence, the two young men fired weapons killing a married

couple who were sleeping at the time. Following the shooting, the two juveniles fled from the house but returned 30 minutes later. Finding no commotion or activity, they reentered the house and took the keys to the Temple car parked in the garage and proceeded to drive the car from the premises.

On Sunday, September 2, 1979, Edwards was arrested at his home pursuant to a warrant charging him with burglary and theft. He was taken to the sheriff's office and then to an interview room. Edwards was given the *Miranda* warnings. He stated that he understood his rights and so indicated in writing. The detective advised Edwards that he was being investigated for murder and that it would be best if he told the truth. Edwards then proceeded to make a statement to the detective in which he implicated himself in the Temple burglary and homicide. After one-half hour and a short break, a second interview was held with Edwards. The interviewing detective referred to the prior *Miranda* warnings, but did not again explain them to him. During this second interview, Edwards admitted committing a number of other burglaries prior to committing the burglary at the Temple home. Both the first and second interviews were taped. A third interview was held and a statement taken on September 4, 1979, at approximately 11:20 p.m. Earlier that day, a petition had been filed in Sedgwick County Juvenile Department, charging him with seventeen felony counts. These three incriminating statements were admitted into evidence at the juvenile waiver hearing. At the hearing, the court heard testimony from a psychiatrist, a psychologist, and a probation officer as to Edwards' social and psychiatric history and his prospects for rehabilitation. Also the directors of various state juvenile facilities testified as to the programs, conditions, and treatment available at the various facilities. At the conclusion of the hearing, the district judge waived juvenile jurisdiction and directed the district attorney to prosecute Edwards as an adult under the applicable criminal statutes.

Appellant Edwards' first point on the appeal is that the trial court erred in receiving into evidence his three confessions mentioned above. He contends that where a juvenile is being questioned by the police in connection with criminal acts, in addition to the traditional *Miranda* warnings required, the juvenile must be specifically advised that his statement can be used against him in an adult criminal prosecution. Appellant argues that, without

this additional warning, the admission of a juvenile's confession violates his right against self-incrimination. Appellant reasons that a juvenile, who is not specifically warned that his statement can be used later in an adult criminal proceeding, is incapable of voluntarily and knowingly waiving his privilege against self-incrimination.

Appellant correctly points out that the rights declared in *Miranda v. Arizona,* 384 U.S. 436, 475, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), were extended to juveniles by *In re Gault,* 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428 (1967). In *Gault,* the United States Supreme Court recognized the problems involved with a juvenile waiver of constitutional rights, charging the courts to first ascertain whether the admission was voluntary, and "not the product of ignorance of rights or of adolescent fantasy, fright or despair." p. 55. This court has, likewise, been concerned with the problem of a juvenile's voluntary and knowing waiver of his right against self-incrimination. *State v. Young,* 220 Kan. 541, 552 P.2d 905 (1976); *State v. Oberst,* 127 Kan. 412, 273 Pac. 490 (1929).

The exclusionary rules, pertaining to illegally obtained confessions, have been considered equally applicable to waiver proceedings in juvenile courts, as to juvenile proceedings or criminal trials. See *e.g., State v. Strickland,* 532 S.W.2d 912 (Tenn. 1975). In *J.T.P. v. State,* 544 P.2d 1270 (Okla. Crim. 1975), the Oklahoma court held that proceedings to certify a minor to stand trial as an adult were "comparable in seriousness to criminal prosecution," and, therefore, must comply with the essentials of due process and fair treatment. The court further held that statements which would be inadmissible in juvenile proceedings or criminal trials were, likewise, inadmissible in certification proceedings. In *In re Harris,* 218 Kan. 625, 629, 544 P.2d 1403 (1976), this court, like the Oklahoma court, viewed a waiver hearing to be so closely related to a specific criminal prosecution that the same policy considerations are applicable. We have concluded that statements which are inadmissible in other juvenile proceedings or in criminal trials are likewise inadmissible in juvenile waiver proceedings.

Having determined that any incriminating statements of Roy D. Edwards must have been voluntarily obtained before becoming admissible in his juvenile waiver proceeding, we must next consider appellant's contention that his confessions were not

voluntary because the *Miranda* warnings given did not include a specific additional warning that any statement given might be used in adult proceedings subsequently brought against him. It should be noted that prior to making a statement, Edwards was advised that any statement he made could be used against him in court. The issue presented has been raised in a number of jurisdictions and it has consistently been held that, although the juvenile must be made aware that criminal prosecution as an adult is a possibility, he need not be specifically warned that any statements given might be used in adult criminal proceedings. In *State v. Luoma,* 88 Wash. 2d 28, 558 P.2d 756 (1977), the juvenile defendant, seventeen and one-half years old, was charged with murder. He was given the traditional *Miranda* warnings at various times after which he made incriminating statements. The court held that where the criminal ramifications were obvious, the defendant was charged with notice that any statements given after the *Miranda* warnings could be used in an adult criminal proceeding. Factors making criminal prosecution obvious included not only the age, intelligence, and experience of the juvenile, but also the patently adversary setting of the interrogation in the police station. Defendant was charged with the knowledge that criminal prosecution was likely in view of the seriousness of the criminal charge and the custodial questioning at the jail. The same holding and rationale has been followed by other appellate courts: *People v. Prude,* 66 Ill. 2d 470, 6 Ill. Dec. 689, 363 N.E.2d 371, *cert. denied* 434 U.S. 930 (1977); *State v. Loyd,* 297 Minn. 442, 212 N.W.2d 671 (1973); *In Interest of A.D.R.,* 515 S.W.2d 438 (Mo. 1974); *State v. Gullings,* 244 Or. 173, 416 P.2d 311 (1966).

In *State v. Hall,* 350 So. 2d 141, 144 (La. 1977), the court rejected the contention that a juvenile was entitled to a specific warning that statements might be used in an adult criminal proceeding in addition to the *Miranda* admonitions. In so holding, the court held that there "is no constitutional requirement that a juvenile be instructed as to the courts in which he may be tried or the potential penalties which may accompany his offense before he can waive his *Miranda* rights and make a free and voluntary confession." See also *State v. Mattox,* 113 Ariz. 252, 550 P.2d 630 (1976). The cases cited by appellant in his brief do not recognize a different rule. They simply hold that under the

totality of the circumstances in the particular case, the juvenile had not knowingly and voluntarily waived his privilege against self-incrimination.

This State has adopted the "totality of the circumstances" test in determining whether a juvenile voluntarily and intelligently waived his right against self-incrimination. In *State v. Young*, 220 Kan. at 546-547, this court listed the relevant factors to include the juvenile's age, the length of the questioning, the juvenile's educational level and mental ability, his prior experience with the police, and his mental state at the time of his arrest. Applying the legal principles discussed above to the factual circumstances in this case, we find that it was not error for the trial court to hold that the appellant voluntarily and intelligently waived his right against self-incrimination in making the statements to the police officers. The appellant was sixteen and had previously been processed through the juvenile system. When arrested, the appellant asked if he was being taken to the juvenile detention center and was told that he had made the big time and was being taken to the county jail. The appellant was repeatedly read the *Miranda* warnings and told to ask questions if he did not understand them. He indicated that he understood his rights and that he wished to talk with the police. The gravity of the offense and the custodial, jailhouse interrogation would impute to appellant knowledge of the adversary nature of the proceedings against him. Furthermore, the court received testimony that the appellant was of average intelligence. Under the totality of the circumstances, appellant must be considered capable of knowingly and intelligently waiving his right against self-incrimination.

The appellant also complains that the trial court erred in considering his third statement made to the police, because, at that time, although counsel had been appointed for him, he had not received notice of the appointment. Appellant argues that once counsel has been appointed, any statement taken from the accused is inadmissible in subsequent proceedings unless counsel is given notice and a reasonable opportunity to be present when the statement is taken. The trial court rejected appellant's contention, finding that the police officer made a reasonable attempt to ascertain if counsel had been appointed by checking with the sheriff's office and was advised that none had been appointed. The trial court also found that although counsel had

been called and requested to represent appellant, the documents necessary to formalize the appointment were not to be signed until later that afternoon which was after the appellant's third statement was obtained. We have concluded that the admission of the third statement of the appellant was not reversible error. The arresting officer made a reasonable inquiry to ascertain whether or not counsel had been appointed for Edwards and was advised in the negative. The appellant did not request the presence of counsel, though he had previously been advised of that right. The absence of counsel in this case did not as a matter of law render statements made to the police involuntary. Furthermore, the admission of the third statement would be harmless error in any event, since the appellant made a full confession of his criminal activities in the first two statements obtained before the court had ever considered the appointment of counsel. We find no error on this point.

The appellant's final point on the appeal is that the trial court erred in finding that he was not a fit and proper subject to be dealt with under the juvenile code. Appellant specifically claims error in the trial court's finding that there were no Kansas juvenile facilities available for the proper treatment of the appellant. In ruling that appellant was not a fit and proper person for treatment under the juvenile code, the trial court stressed the inadequacies of the juvenile system in providing rehabilitative treatment for older juvenile offenders. The trial court's determination that there was no facility available for proper rehabilitative treatment was based in part on the trial judge's conclusion that the committing court could not require the juvenile facility, or the Secretary of Social and Rehabilitative Services to whom the delinquent or miscreant juvenile is committed, to keep the appellant locked up until age twenty-one or until the committing court was satisfied the juvenile was successfully rehabilitated. K.S.A. 1979 Supp. 38-826c. The trial court was of the opinion that the appellant would probably not remain in a juvenile facility long enough to complete the necessary treatment and the interests of the community, therefore, required that he be processed as an adult. It cannot be said, however, that the trial court based its decision solely on that conclusion. There was some evidence that the necessary treatment for appellant would not be available through the juvenile rehabilitative system. As stated in *In re Ferris,* 222

Kan. 104, 112, 563 P.2d 1046 (1977), "appellant mistakenly attempts to equate availability of institutions with institutions suitable for his rehabilitation."

Appellant also contends that the trial court, in making its ruling on the record, failed to enumerate two of the seven factors outlined in K.S.A. 1979 Supp. 38-808(*b*), and thus committed reversible error in failing to consider all factors mandated by the legislature. In his ruling, the trial court did not specifically discuss factors three and five relating to the maturity of the juvenile and his past history. While the above factors would seem to support the juvenile's amenability to treatment within the juvenile system, the statute does not require each factor to receive equal weight. To the contrary, 38-808(*b*) specifically states that the insufficiency of the evidence pertaining to any one or more of the factors listed in the subsection shall not in and of itself be determinative of the issue. The trial court placed great weight on the severity of the offense, the interests of the community, and the lack of facilities capable of providing the necessary treatment for the appellant. Considering all of the evidence presented at the hearing, we find that there was substantial competent evidence to support the findings of the trial court and that the trial court did not err in holding that Edwards was not a fit and proper person to be dealt with under the juvenile code.

The judgment of the district court is affirmed.