(617 P.2d 1273)

No. 80-51985-A

## In the Interest of WILLIAM DAVID JOHNSON, A Minor Under the Age of 18 Years.

Petition for review denied December 10, 1980.

Opinion filed October 17, 1980.

*Ernest H. Moulos* and *Gary Howard,* of Wichita, for appellant.

*Ronald D. DeMoss,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, for the appellee.

Before FOTH, C.J., REES, J., and HARMAN, C.J. Retired, sitting by designation.

FOTH, C.J.: William David Johnson appeals from an order finding him not a "fit and proper subject to be dealt with under the Kansas juvenile code" pursuant to K.S.A. 1979 Supp. 38-808(*b*) and certifying him for trial as an adult on charges of aggravated robbery and assault. He contends the evidence was insufficient to support the order.

At the certification hearing the State's evidence dealt exclusively with how the alleged crime was planned and perpetrated. No evidence was introduced as to Johnson's record or previous history (although it was agreed there was no prior record) and none as to his personal background, psychological makeup or maturity (although it was undisputed that he was just 17 days short of his eighteenth birthday when the incident occurred). Likewise, no evidence was offered by either party as to the facilities available to the court operating under the juvenile code, but the trial judge took into account his own knowledge gained through considerable experience in working under the code.

The issue is whether evidence thus limited in scope is sufficient under the present statute to sustain a finding that a juvenile should be tried as an adult. As the State concedes in its brief, "After reviewing the pertinent opinions . . . the State has found no case where [the] court affirmed a waiver based on

cumulatively less substantial evidence than was presented in this case."

Had this case arisen under the statute as it read prior to 1975, the result would have been clear. Given the age of the juvenile and the felonious nature of the offense, judicial inquiry under the prior statute focussed exclusively on the amenability of the child to the care, treatment and training programs available through the court; substantial evidence on this issue was required, and the seriousness of the offense was not controlling. See, *e.g., In re Patterson, Payne & Dyer,* 210 Kan. 245, 499 P.2d 1131 (1972). In this case evidence on amenability was totally lacking, and reversal would have been required.

In 1975, however, the statute was amended to parallel the analysis of *Kent v. United States,* 383 U.S. 541, 16 L.Ed.2d 84, 86 S.Ct. 1045 (1966), which suggested factors a court might consider in certifying a juvenile under the District of Columbia juvenile code. See *In re White,* 224 Kan. 717, 585 P.2d 1046 (1978). K.S.A. 1979 Supp. 38-808(*b*) now provides in part:

"In determining whether or not such finding should be made, the court shall consider each of the following factors: (1) Whether the seriousness of the alleged offense is so great that the protection of the community requires criminal prosecution of the child; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) the maturity of the child as determined by consideration of the child's home, environment, emotional attitude and pattern of living; (4) whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted; (5) the record and previous history of the child; (6) whether the child would be amenable to the care, treatment and training program for juveniles available through the facilities of the court; and (7) whether the interests of the child or of the community would be better served by criminal prosecution of the child. *The insufficiency of evidence pertaining to any one or more of the factors listed in this subsection shall not in and of itself be determinative of the issue.*" Emphasis added.

As may be seen, amenability is now but one of seven factors to be considered, and, most importantly, "insufficiency of evidence" as to any one factor is not controlling.

Since the amendment two countervailing principles have been established. On the one hand, the decision to certify must still be supported by substantial evidence. *In re Ferris,* 222 Kan. 104, 563 P.2d 1046 (1977). Hence a petition, although charging murder, supported only by arguments of counsel and not by any evidence, was held inadequate for certification in *In re White,* 224 Kan. 717.

On the other hand, "the statute does not require each factor to receive equal weight." *In re Edwards,* 227 Kan. 723, 729, 608 P.2d 1006 (1980). In *Edwards* the trial court's order failed even to mention two of the statutory factors—maturity of the child and the previous record of the child. The Supreme Court nevertheless upheld the certification, relying on the statutory direction that insufficiency of evidence on one or more factors should not control. It was enough that there was substantial evidence to support the ultimate finding that the juvenile should be treated as an adult, despite the trial court's apparent disregard of two elements which might bear on that ultimate finding.

In this case the State's evidence showed: On January 10, 1980, Johnson and a friend borrowed a .357 Magnum and spent the night together, discussing among other things what "pulling a job" would be like. The next day they held up a Wichita liquor store, with Johnson holding the gun on the 75-year-old female clerk. After taking some $100 from the cash drawer and just as they were departing, Johnson fired a shot in the direction of the clerk. It struck about a foot from her, and might well have hit her had she not impulsively moved just before the shot was fired.

On the basis of this evidence the trial court spoke to each of seven statutory factors:

"THE COURT: I'm going to cover each of the points mentioned in KSA 38-808 in making the determination as to whether the juvenile is a fit and proper subject to be dealt with under the Kansas Juvenile Code. First is whether the seriousness of the alleged offense is so great that the protection of the community requires criminal prosecution of the child. My finding in regard to that particular point is that it is a serious offense involving the shooting of a gun at the very least in the general direction of an individual, and that it is serious enough to require criminal prosecution of the child.

"The second is whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner. In that regard I am going to find that the offense was, alleged offense, was committed in an aggressive, violent, and willful manner.

"The third is the maturity of the child as determined by consideration of the child's home, environment, emotional attitude and pattern of living. There's really been no evidence on that except that the child is now age eighteen, which does indicate that he is an adult at this time, or at the time of this hearing. And at the time of this hearing he is mature enough to be an adult.

"Fourth is whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially a person injured as a result. No personal injury did result in this case, but the offense was against a person and under that provision I am to give more weight to an offense against a person, although there was no personal injury in this case.

"Number five, the record and previous history of a child. Basically there really just hasn't been any evidence presented on that part.

"[DEFENSE COUNSEL]: I stipulate there's none. There is none.

"THE COURT: Yeah. That there is no prior record.

"The sixth would be whether the child would be amenable to the care, treatment and training program for juveniles available through the facilities of the Court.

"Based on the evidence that has been presented here, or should say there really hasn't been any evidence presented in that regard and I am only relying on my own personal knowledge of the facilities that are available, my personal knowledge of those facilities indicates, or, is that there may be some programs that could do the juvenile some good; however, there are no specific programs and it is hard to find programs in Kansas for persons when they have reached the age of eighteen.

"Seven is whether the interests of the child or of the community will be better served by criminal prosecution of the child. My finding that the interests of the child, of the community would be better served by criminal prosecution and also that the interests of the child would be better served by criminal prosecution.

"Weighing these items on balance which is what I think is required under KSA 38-808 I am going to find that the juvenile in this case is not a fit and proper subject to be dealt with under the Kansas Juvenile Code and I will order that juvenile jurisdiction be waived and that he be prosecuted as an adult. The main reasons for this decision are that he is currently eighteen years of age and I don't think it would serve any purpose for him to be treated as [a juvenile] when he is already eighteen years of age and was just within or very close to being eighteen years of age at the time the offense was committed. And also the seriousness of the offense."

Appellant's basic contention is that the trial court's decision is contrary to the rule "[t]he gravity of the misconduct attributed to a juvenile is not the controlling factor in determining the proper disposition of a juvenile offender." *In re White,* 224 Kan. 717, Syl. ¶ 2. See also *In re Ferris,* 222 Kan. at 110.

Granting that the gravity of the offense is not the "controlling" factor, analysis of the seven criteria of the amended statute reveals that the nature of the offense weighs heavily in at least half of them. Thus, the very first is "[w]hether the seriousness of the alleged offense is so great that the protection of the community requires criminal prosecution of the child." On this element, "gravity" is the beginning and the end of the court's inquiry. The second factor also turns exclusively on the nature of the offense, *i.e.,* whether it was "aggressive, violent, premeditated or willful." The same may be said of the fourth, whether the offense was against persons or property, "greater weight being given to offenses against persons, especially if personal injury resulted."

Number seven, whether the interests of the child "or" the community calls for criminal prosecution, as a practical matter, adds nothing of substance to the other six. Rather, it calls for the ultimate conclusion to be reached after weighing the other six.

In the light of the clear legislative direction that lack of evidence on "one or more" of the seven factors is not determinative, it is difficult to escape the conclusion that in any given case the nature and circumstances of the alleged offense may indeed be the decisive factor. Here, for example, the offense was serious (factor 1); it was aggressive and premeditated (factor 2); and it was against a person, with injury avoided only through the clerk's fortuitous movement at the last minute (factor 4). All three weigh heavily in favor of criminal prosecution in the interests of the community (factor 7).

Our analysis might well end at this point. Under the rule of *In re Edwards,* 227 Kan. at 729, "the statute does not require each factor to receive equal weight." There was concededly "substantial evidence" on each of three (or four, counting No. 7) of the statutory factors; the trial court would have been within the bounds of its discretion in giving controlling weight to those three or four even if there had been evidence on the other three which would have indicated a different result.

In fact, the evidence or lack thereof on the other three was at best inconclusive. Johnson was almost eighteen at the time of the offense, and was eighteen at the time of the hearing. By legislative fiat he stood before the court as an adult, presumed in the absence of evidence to the contrary to have the "maturity" of an adult (factor 3). On amenability to available facilities (factor 6), while the trial court had before it no social or psychological studies, it knew Johnson was eighteen, and relied on personal experience to find that there was a shortage of programs or facilities available for eighteen-year-olds. Evidence on the latter element would obviously have been preferable. However, *State v. Green,* 218 Kan. 438, Syl. ¶ 5, 544 P.2d 356 (1975), suggests that the child and his counsel have a duty to put forth suggested alternatives to certification. See also *State v. Lewis,* 220 Kan. 791, 793-4, 556 P.2d 888 (1976). No effort to do so was made in this case. Finally, in the absence of evidence the court acted on the assumption that Johnson had no record or prior dealings with the juvenile authorities (factor 5). The court simply chose not to give this factor

much weight as against those factors on which there was evidence. That was its prerogative under *Edwards.*

In summary, it appears to us that the 1975 amendment wrought a substantial change in the standards for certification. In the case of 16 and 17-year-olds we perceive in the legislative enactment a significant retreat from the previous emphasis on the welfare of the child and a far greater emphasis on concern for the welfare of the community. Amenability, based on the individual characteristics of the child, has been downgraded from the controlling factor to but one of seven. The nature and gravity of the offense have been promoted from incidental factors in a determination of amenability to a position of parity in reaching the ultimate decision. Of the present seven factors three relate to the offense, three to the offender, and the seventh simply requires a balancing of community interest against that of the child.

*Edwards* says the seven statutory criteria are not entitled to equal weight, and the statute says substantial evidence on each is not required. It is now sufficient if the ultimate decision is supported by substantial evidence. The decision to certify in this case is supported by substantial evidence on four of the seven factors, minimal or no evidence on the other three. Under what we perceive to be the legislative intent as interpreted in *Edwards,* the judgment must be and is affirmed.