557 P.2d 1077

STATE of Arizona, Appellee,

v.

Ted Stephen WARE, Appellant.

No. I CA–CR 1592.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 5, 1976.

Rehearing Denied Nov. 30, 1976.
Petition for Review Denied Dec. 21, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III, Chief Counsel, Crim. Div., Teresa S. Thayer, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Michael Tryon and Terry J. Adams, Deputy Public Defenders, Phoenix, for appellant.

## OPINION

NELSON, Judge.

After a trial by jury, the appellant was convicted of sale of stolen property valued at $100 or more. The imposition of sentence was suspended for four years and appellant was placed on probation. On appeal, he argues:

(1) A mistrial was improperly ordered by the trial judge and his second trial violated the constitutional prohibition against double jeopardy;

(2) The evidence was insufficient to support a jury finding that the stolen property was valued at $100 or more;

(3) Underscoring by the trial court of certain jury instructions was mis-leading and denied the appellant due process of law;

(4) A.R.S. § 13–621(A) is unconstitutional because it violates due process of law, equal protection of the law, and constitutes cruel and unusual punishment;

(5) Instructions to the jury on the issue of "value" were misleading and resulted in a denial of due process of law.

## GRANTING OF MISTRIAL

At appellant's first trial, testimony was elicited from a federal officer which tended to implicate the appellant in prior bad acts. Appellant's counsel moved for a mistrial, claiming that the testimony was unresponsive and showed prior police contact and prior bad acts of the defendant. The trial judge denied the motion for a mistrial but indicated to the prosecutor that unless the response was clarified it would be prejudicial. Subsequent to the State's attempt to clarify the prejudicial testimony, the record demonstrates that a conference was held in chambers. After the conference, the trial judge declared a mistrial based on the prejudicial content of the non-responsive answer given by the federal agent. On appeal, the appellant urges that a *sua sponte* declaration of a mistrial by the judge was not a manifest necessity and that, therefore, his retrial violated federal constitutional prohibitions against double jeopardy. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

We think that appellant has overlooked the obvious fact that the mistrial was granted by the trial judge on the very grounds urged by the appellant. It is clear from the record that the trial judge simply granted the prosecutor the opportunity to dispel the prejudice which had been created by the federal officer's testimony. The real point is that the appellant asked for the mistrial. It is settled that in the absence of prosecutorial or judicial overreaching, a motion for mistrial by a de-

tendant removes any barrier to re-prosecution. See *State v. Madrid,* 113 Ariz. 290, 552 P.2d 451 (1976); *State v. Ramirez,* 111 Ariz. 504, 533 P.2d 671 (1975); *State v. Wright,* 112 Ariz. 446, 543 P.2d 434 (1975). We find no intentional misconduct which was motivated by a desire to harass the defendant or cause a mistrial in order that a better case could be subsequently presented by the prosecutor. In the absence of such circumstances, the granting of a mistrial will not bar a subsequent prosecution. See *State v. Wright,* supra. The appellant, having sought the mistrial, may be retried. *State v. Madrid,* supra.

### SUFFICIENCY OF EVIDENCE

Appellant next contends that the evidence was insufficient to support the jury's verdict of guilty. His argument is two-fold. First, he argues that the evidence was insufficient to prove that the defendant knew or had reason to believe that the weapon sold by him was stolen property. Next, he argues that the evidence was insufficient to prove that the property was worth $100 or more. A.R.S. § 13–621(A) states:

> "A person who, for his own gain, or to prevent the owner from again possessing the property, buys, sells, possesses, conceals or receives personal property, knowing or having reason to believe that the property is stolen, is guilty of a misdemeanor, if the value of the property is less than one hundred dollars, and is guilty of a felony if the value of the property is one hundred dollars or more." (As amended 1974)

■ We note that there was testimony given by a special agent during the trial which indicated appellant knew that the firearm which he sold to the special agent was stolen. The appellant put on evidence which tended to disprove the allegation that he "knew or had reason to know" that the weapon he had sold was stolen. Nevertheless, as the State correctly points out, it is the jury that makes the decision when the evidence is in conflict. *State v. Flowers,* 110 Ariz. 566, 521 P.2d 998 (1974). It is not the function of the appellate courts to re-try conflicts in the evidence. *State v. Flowers,* supra.

■ ■ The second basis of appellant's attack on the sufficiency of the evidence dealt with the alleged lack of evidence showing that the weapon sold was valued at $100 or more. Our review of the record indicates that there were no less than four opinions expressed as to the value of the weapon on the date that it was sold to the special agent. Wholesale and retail estimates were given with at least three of the witnesses testifying that the weapon had a retail value in excess of $100 on the date it was sold to the agent. The question of value is one for the jury. *State v. Grijalva,* 8 Ariz.App. 205, 445 P.2d 88 (1968). There was substantial testimony supporting a jury finding of value in excess of $100. That there was testimony giving an estimate of value below $100 did no more than create a jury question. The question was one for the jury to resolve. *State v. Flowers,* supra.

### UNDERLINING OF INSTRUCTION

■ Appellant next contends that the underlining of certain words in a jury instruction denied him his right to due process of law. *State v. Whitaker,* 112 Ariz. 537, 544 P.2d 219 (1975). The State argues that, if error at all, it was harmless. The State also points out that the underscoring in the instruction was perhaps more beneficial to appellant than to the prosecution, since it emphasized the fact that the charge was not evidence against the defendant. The jury instruction complained of in this case, with its underlined portions, read as follows:

> "The state has charged the defendant with the crime of SALE OF STOLEN PROPERTY. The charge is not evidence against the defendant. You must not think the defendant is guilty just because he has been charged with a crime.

The defendant has pled 'not guilty'. The defendant's plea of 'not guilty' means that the state must prove every part of the charge beyond a reasonable doubt."

On the issue of underlining, the court in *Whitaker* stated:

"While the use of underscoring to emphasize crucial language in jury instructions can serve to clarify instructions, we feel that there is danger in the practice and it is not recommended. In the instant case we find no error." 112 Ariz. 543, 544 P.2d at 225.

*Whitaker* clearly does not hold that all underlining of instructions requires reversal. To the contrary, while disapproving the practice, it notes that underlining may at times help to clarify instructions. We agree with the State that if anything, the underlining of the instructions was beneficial to the appellant. In addition, there was no objection to the instruction and the failure to object waives any right to raise the issue on appeal. *State v. Whitaker,* supra; *State v. Winter,* 109 Ariz. 505, 513 P.2d 934 (1973).

## CONSTRUCTION OF A.R.S. § 13–621(A)

Next, the appellant argues that the phrase "having reason to believe" in A.R.S. § 13–621(A), supra, renders the statute unconstitutional. It is clear in Arizona that before a defendant may be found guilty of receiving or selling stolen property, it must be proven that he dealt with the property while "knowing or having reason to believe the property was stolen". *State v. Butler,* 9 Ariz.App. 162, 450 P.2d 128 (1969); *State v. Tellez,* 6 Ariz.App. 251, 431 P.2d 691 (1967).

The crucial issue therefore concerns the test to utilize in determining the existence and the requisite caliber of the guilty knowledge to convict the defendant. In other words, must the State prove the defendant *himself* had actual knowledge or a belief that the goods were stolen, or is it enough to prove that a reasonable man under similar circumstances of the defendant would have known the goods were stolen.

Some courts take the view that the existence of guilty knowledge may be predicated on the fact that the defendant received the property under such circumstances as would satisfy a man of ordinary intelligence and caution that it was stolen. *State v. Abraham,* 189 Neb. 728, 205 N.W.2d 342 (1973); *Bennett v. State,* 211 So.2d 520 (Miss.1968), cert. den. 393 U.S. 320, 89 S. Ct. 555, 21 L.Ed.2d 515; *McGlothlin v. State,* 1 Md.App. 256, 229 A.2d 428 (1967); *People v. Holtzman,* 1 Ill.2d 562, 116 N.E. 2d 338 (1953); 66 Am.Jur.2d, *Receiving Stolen Property,* § 9, pp. 301–302; 76 C.J. S. *Receiving Stolen Goods,* § 8, p. 14; Annot. 147 A.L.R. 1059.

Other courts, however, reject the "reasonable man" standard and hold that the guilty knowledge or belief of the accused *himself* is the only correct avenue of examination. *Reser v. State,* 27 Ariz. 43, 229 P. 936 (1924); *Peterson v. United States,* 213 F. 920 (9th Cir. 1914); *State v. Redeman,* 9 Or.App. 329, 496 P.2d 230 (1972); *United States v. Werner,* 160 F.2d 438 (2nd Cir. 1947); *State v. Mills,* 225 S.C. 151, 81 S.E.2d 285 (1954); *Lewis v. State,* 81 Okl.Cr. 168, 162 P.2d 201 (1945); *Camp v. State,* 66 Okl.Cr. 20, 89 P.2d 378 (1939); 66 Am.Jur.2d, *Receiving Stolen Property,* § 9, pp. 301–302; 76 C.J.S. *Receiving Stolen Goods* § 8, p. 14; Annot. 147 A.L.R. 1059.

In *Peterson v. United States,* supra, the court found it was error to instruct the jury on the "reasonable man" standard:

"Congress [in passing the statute] used the word 'knowing,' and defined the crime as the purchase of stolen property by one having knowledge of the theft. It might have denounced as a crime the receipt of stolen property under conditions sufficient to create a suspicion in the mind of a reasonable man, but it did not do so. The gist of the offense is the actual state of the defendant's mind when he purchases the property, and not what, under like circumstances, might be

the state of mind of some other person; the standard by which guilty knowledge is to be imputed is the defendant's mental attitude and not that of the imaginary average man. * * * The ultimate fact which the jury must find before a conviction is warranted is that the defendant had such knowledge; and knowledge is something more than a suspicion. Moreover, circumstances which would create a strong suspicion in the mind of one man might have little significance for another, and one is not to be convicted of a crime because he is of a less suspicious nature than the ordinary man, and where, therefore, he may have acted in entire good faith in the face of conditions which might have put another upon his guard." 213 F. at 922–923.

Judge Learned Hand in *United States v. Werner*, supra, carefully articulated the rationale for rejecting the objective "reasonable man" standard and applying the more appropriate subjective "actual knowledge or belief" criterion:

"The defendants ask us to distinguish between 'knowing' that goods are stolen and merely being put upon an inquiry which would have led to discovery; but they have misconceived the distinction which the decisions have made. The receivers of stolen goods almost never 'know' that they have been stolen, in the sense that they could testify to it in a court room. The business could not be so conducted, for those who sell the goods—the 'fences'—must keep up a more respectable front than is generally possible for the thieves. Nor are we to suppose that the thieves will ordinarily admit their theft to the receivers: that would much impair their bargaining power. For this reason, some decisions even go so far as to hold that it is enough, if a reasonable man in the receiver's position would have supposed that the goods were stolen. That we think is wrong; and the better law is otherwise, although of course the fact that a reasonable man would have thought that they had been stolen, is some basis for finding that the accused actually did think so. But that the jury must find that the receiver did more than infer the theft from the circumstances has never been demanded, so far as we know; and to demand more would emasculate the statute, for the evil against which it is directed is exactly that: i.e., making a market for stolen goods which the purchaser believes to have probably been stolen." 160 F.2d at 441–442.

We are persuaded by the position of the courts applying the subjective test and the application of that test to A.R.S. § 13–621(A), supra, sustains the constitutionality of the statute. In fact, in 1924 the Arizona Supreme Court in *Reser v. State*, supra, adopted the subjective test. Although the statute the court interpreted did not contain the "having reason to believe" language now contained in A.R.S. § 13–621(A), supra,[1] the reasoning of the court remains dispositive today. The court held that instructing the jury on the "reasonable man" standard[2] was reversible error:

"It is contended that these instructions are erroneous, because they authorize a conviction even though appellant may not have had guilty knowledge that the

---

1. "Every person who, for his own gain, or to prevent the owner from again possessing the property, buys or receives any personal property, knowing the same to have been stolen, is guilty of a misdemeanor, if the value of the property so bought or received is less than fifty dollars, and is guilty of a felony if the value of the property so bought or received is fifty dollars or more * * *" (§ 493, Penal Code, Revised Statutes of Arizona (1913)).

2. Part of the plethora of instructions given by the trial court read as follows:
"But the fact must be shown to your satisfaction beyond any reasonable doubt that when the defendant received the property, if he did receive it, it was in the possession of the thief who had stolen it from the owner, and that the defendant received it under such circumstances that a man of ordinary prudence and caution would be satisfied that it was stolen property." 27 Ariz. at 47, 229 P. at 937.

property was stolen. It will be observed that they do permit a verdict of guilty whether defendant's knowledge of the theft was actual or merely imputed. Under the statement that, if the facts under which the property was received by the accused were such that a man of ordinary prudence and caution would have been satisfied that it was stolen, the law imputed to the defendant knowledge of this fact, the jury's only duty on the question of guilty knowledge was to decide what an ordinarily prudent and cautious person would have done under the circumstances. This was equivalent to advising the jury that, if it concluded · such a man would have been satisfied the property was stolen, the law would attribute the same knowledge to the accused. *It relieved the jury from the necessity of considering whether the circumstances under which the defendant received the property were such as to cause him to realize individually it was stolen, and permitted his conviction upon the jury's determination of what an ordinarily prudent and cautious man would have done under the circumstances, without taking cognizance of the fact that there was nothing to show whether the accused possessed the prudence and caution of the one by whose actions his were tested. The question for the jury was not whether the facts would have given the ordinary person knowledge of the theft, but whether they had such effect upon the defendant himself with his understanding of their significance.* Many people are not as cautious and prudent as the ordinary person, hence the circumstances might have meant knowledge to him, and nothing to the accused." 27 Ariz. at 48–49, 229 P. at 937. (Emphasis added)

The court concluded:

"What effect this instruction had on the jury no one can say. Whether it be-

lieved Smith's statement entirely or accepted it only in so far as the occurrences at the time of the search and arrest tended to corroborate it, or whether it concluded, regardless of what he said, that any ordinarily prudent and cautious man would have known from the circumstances under which the property was received that it was stolen, is problematical. It was made very plain by the explanation of the term 'knowledge' and the three subsequent references in · the instructions to this explanation that it was authorized to pursue the course last mentioned. This we think was error." 27 Ariz. at 52, 229 P. at 938.

■ We hold that A.R.S. § 13–621(A), supra, requires a finding and proof that the defendant *himself* possessed actual knowledge or belief that the goods he retained were stolen. We reject the "reasonable man" approach which attempts to integrate the civil negligence standard into the criminal law, primarily for the reason that implementation of this test would allow juries to return guilty verdicts against those who may be less circumspect and intelligent than the average man.

■ Criminal law is not as concerned with the weighing of equities as is civil negligence law, but is concerned with determining the guilt or innocence of each individual defendant. Each defendant should be judged according to his *own* mental state in each stolen property case and may not be judged in contrast to what the normal, cautious person would do under similar circumstances.

No legislative history has been presented by counsel as to the specific reason why the phrase "having reason to believe" was added to the statute when it was amended in 1969 to raise the monetary amount from $50 to $100[3], differentiating a felony from a misdemeanor. In light of our holding regarding the impropriety of a "reasonable

---

3. Before its change in 1969, A.R.S. § 13–621 (A) read:

"A person who, for his own gain, or to prevent the owner from again possessing

the property, buys or receives personal property, knowing the property to have been stolen, is guilty of a misdemeanor, if the value of the property bought or received is

man standard", it is our view that the language added in 1969 (as amended Laws 1969, Ch. 133, § 5) and retained in 1974 (as amended Laws 1974, Ch. 144, § 2) merely codified the law in Arizona as set down by the Arizona Supreme Court in *Reser v. State,* supra. Change in statutory language is presumed to be a change in form only, unless it is clearly shown that the Legislature intended to change the meaning of the law. *State ex rel. Bean v. Hardy,* 110 Ariz. 351, 519 P.2d 50 (1974).

In the case at bar, appellant's counsel failed to object to the Selling of Stolen Property instruction[4]. Failure to object to an instruction is a waiver of any alleged mistake, unless fundamental error is committed. Rule 21.3(C), Rules of Criminal Procedure, 17 A.R.S.; *State v. Winter,* supra. Since we find that the instruction simply paraphrased A.R.S. § 13–621(A) and no reference to a "reasonable man" standard was recited to the jury which might have misled it, as in *Reser,* supra, we find no fundamental error was committed.

## INSTRUCTION ON VALUE

As his last issue on appeal, appellant argues that the instruction given to the jury defining their duty with respect to making a finding of "value" was erroneous and constituted fundamental error[5]. Again no objection was voiced by appellant's counsel at the giving of the instruction. *State v. Winter,* supra.

The issue of "value" was clearly a material issue in the case since it alone distinguished the appellant's liability for either a felony or misdemeanor conviction. See A.R.S. § 13–621(A), supra. Nevertheless, we note that the trial court did instruct the jury on its duty to determine the value of the property sold. That the instruction was not in language set out in *State v. Sorrell,* 95 Ariz. 220, 388 P.2d 429 (1964), now urged by appellant on appeal as setting forth the correct statement of law, does not convince us that fundamental error has been committed. The trial court instructed the jury that they must determine the value of the weapon that was sold. The instruction clearly did not forbid the jury to consider the appellant's evidence that the weapon was worth less than $100, but to the contrary allowed the jury to use all the evidence presented to determine the fair market value of the weapon at the time and place of the sale. See *State v. Miller,* 108 Ariz. 303, 497 P.2d 516 (1972). The evidence supports their determination.

The judgment and sentence are affirmed.

DONOFRIO, P. J., and OGG, J., concur.

---

less than fifty dollars, and is guilty of a felony if the value of the property bought or received is fifty dollars or more." (Arizona Revised Statutes (1956)).

4. "A person who, for his own gain, or to prevent the owner from again possessing the property, sells personal property, knowing or having reason to believe that the property is stolen, is guilty of the crime of Selling Stolen Property. If you determine the defendant sold stolen property you must determine the value of said property."

5. "You must determine the value of the 9 Milimeter [sic] Mauser pistol at the time of the sale which is alleged to have happened on January 28, 1975. You must determine whether the value of the pistol was $100.00 or more or $99.99 or less at the time of said sale. The reasonable and fair market value at the time of the sale in the Phoenix area shall be the test. Fair market value is the highest price estimated in terms of money, for which the property would have sold in the open market at that time and in that locality, if the owner was desirous of selling, but under no urgent necessity of doing so, if the buyer was desirous of buying but under no urgent necessity of doing so, if the seller had a reasonable time within which to find a purchaser, and if the buyer had knowledge of the character of the property and of the uses to which it might be put."