598 P.2d 994

STATE of Arizona, Appellee,

v.

M. L. RAY, Appellant.

No. 1 CA–CR 2672.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 10, 1978.

Rehearing Denied Nov. 13, 1978.

Review Granted Nov. 28, 1978.

Bruce E. Babbitt, Former Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Asst. Atty. Gen., Gregory A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Henry J. Florence, Ltd. by Charles K. Ledsky, Phoenix, for appellant.

## OPINION

FROEB, Chief Judge.

Appellant was charged by indictment with possessing a stolen motor vehicle in violation of A.R.S. § 28–1423. He was convicted after a trial by jury and was sentenced to serve from three to five years in the Arizona State Prison. The issues raised by appellant concern: (1) the use of the preliminary hearing transcript at trial; (2) the admissibility of statements which the appellant made to an investigating officer subsequent to what he contends was an illegal arrest; (3) the trial court's amendment of the indictment; (4) sufficiency of the evidence; and (5) the propriety of certain jury instructions.

The facts relevant to this appeal are as follows: on or about July 21, 1975, the investigating officer, Sgt. Warriner, received information from an informant to the effect that a GMC pickup truck stolen from New Mexico was in appellant's lot in Phoenix; that appellant was driving a brown, late-model Cadillac with out-of-state plates which was stolen; and that the brown Cadillac had been at "Bill's" house near Maricopa, Arizona. The informant drove Warriner to appellant's lot and pointed out the GMC pickup and he also accompanied Warriner to "Bill's" house in Maricopa. Bill, who was later identified as William Granger Goddard, stated that a Cadillac with Washington plates had been at his home earlier in 1975. The parties stipulated that the informant had been reliable in the past, but that his information did not result in any arrests or convictions. The parties further stipulated that the informant did not tell Warriner how he knew that the GMC pickup and the brown Cadillac were stolen, nor did he indicate how he knew that appellant was in possession of the vehicles.

The record indicates that Wilhelm Rosemann was the owner of a lot located in Phoenix. The east half of the lot was leased to appellant and Ken Alexander for the purpose of storing and repairing damaged mobile homes. Rosemann's business was located on the west half of the property. From the fall of 1974, various people, including Ken Alexander, lived on the east half of the property. A few months prior to July, 1975, Rosemann noticed a 1974 GMC pickup truck on the east half of the property which was moved to the west half of the property approximately two weeks prior to July 22, 1975.

Acting on the tip of the informant, the police arrived at Rosemann's lot on July 22, 1975, for purposes of investigating the GMC pickup truck. The officers of the Phoenix Police Department had observed the pickup truck on the premises on the previous day and had sent a teletype to New Mexico to determine whether the truck was stolen. The teletype confirmed that a vehicle matching the description of the truck on Rosemann's lot was stolen. On July 22, 1975, the police went to the lot to investigate the GMC pickup. Rosemann told them that the truck belonged to appellant because he had seen the truck in the east half of the yard previously. He did not indicate that appellant parked the truck on the west side of the property. Rosemann testified further that neither appellant nor any of his employees ever gave him permission to allow the police to examine the vehicle, nor did he have the keys to the vehicle, nor had he ever discussed the vehicle with appellant or any of his employees.

With Rosemann's permission, the officers opened the hood of the pickup and leaned into the engine compartment to obtain the vehicle identification number. The officers then confirmed that the GMC pickup was the same one indicated as stolen on the teletype from New Mexico of the previous day. At approximately 12:30 P.M., on July 22, 1975, Sgt. Warriner issued a bulletin on the police radio for the arrest of appellant for possession of the stolen GMC pickup. The broadcast for the arrest occurred after the pickup was searched. The officers had not procured a search warrant for the pickup nor had they procured an arrest warrant prior to the arrest of appellant. The parties stipulated that the police did have time to secure a search warrant for the pickup.

The facts further indicate that on July 21, 1975, officers began surveillance on a residence located in Glendale, Arizona. They observed a brown Cadillac with Arizona plates in the driveway. The surveillance continued on July 22, 1975. During the afternoon a woman, who had been observed in the residence the previous day, moved the brown Cadillac from the driveway to the street in front of the house and reentered the residence. The officers checked the Arizona license plates on the brown Cadillac and found them registered to a 1973 Cadillac belonging to James Ray, with an address of Pie Town, New Mexico.

The officers who were observing the house learned over the police radio that orders had been given to arrest appellant on the charge of possession of the stolen pickup. At approximately 5:50 P.M., on July 22, 1975, appellant drove into the premises in a white 1973 Cadillac convertible. He was arrested on the basis of the radio broadcast. After the arrest, the officers checked the vehicle identification numbers on both Cadillacs by looking through the front windows at the numbers on the dashboards. They discovered that the brown Cadillac was stolen. The license plates on the white 1973 Cadillac were found to be registered to a Ford. Appellant was arrested and the brown Cadillac was searched and seized after the officers had checked the identification numbers. No warrants were obtained.

Appellant was charged with possession of a stolen motor vehicle on October 1, 1975. A preliminary hearing was held in the Glendale justice court and the appellant was bound over for trial. One of the primary witnesses at the preliminary hearing was William Granger Goddard. That case was dismissed for a violation of the time limit set forth in the Arizona Rules of Criminal Procedure.

On May 20, 1976, the grand jury indicted appellant for possession on July 22, 1976, of a stolen motor vehicle, specifically a 1974 Cadillac, two-door (the brown Cadillac) in violation of A.R.S. § 28–1423. The appellant moved for a new finding of probable cause and the State moved to amend the indictment to show 1975 instead of 1976 as the correct year for the offense. The appellant's motion was denied and the State's motion was granted.

The trial commenced on January 28, 1977. At the beginning of the trial, a voluntariness hearing was held and statements the appellant had made to Warriner were found to be admissible. The State moved the court to admit the preliminary hearing testimony of Goddard, and, after a hearing, the court granted the motion. Throughout the proceedings the appellant made motions for directed verdict and mistrial which were denied.

## USE OF PRELIMINARY HEARING TRANSCRIPT AT TRIAL

Appellant raises, as his first allegation of error, the admission of the preliminary hearing transcript containing the testimony of William Goddard. His argument is twofold. He contends first that the State failed to make an adequate showing as to the unavailability of the witness and second that his opportunity to cross-examine the witness at the hearing was curtailed in such a way that he was denied his right to confront the witness.

Goddard testified at the preliminary hearing that around March 15, 1975, two men brought a brown Cadillac with Washington license plates to his home in Maricopa, Arizona, told him it was stolen and paid him $200 to keep it. Approximately two weeks later, two other men, followed by a person identified by Goddard as M. L. Ray, came to Goddard's home in Maricopa and left with the vehicle. Goddard testified that Ray arrived and left in his 1973 white Cadillac convertible. He said that he had not seen Ray drive the brown Cadillac, although Ray followed it as it departed the Goddard premises.

While this evidence was not essential to the conviction of the appellant, it did introduce a connection between appellant and the stolen car in a suspicious setting which undermined appellant's version of how the stolen car was acquired.

17 A.R.S., Arizona Rules of Criminal Procedure, Rule 19.3(c), states that prior recorded testimony is admissible when "(i) The party against whom the former testimony is offered was a party to the action or proceeding during which a statement was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he now has . . . and (ii) The declarant is unavailable as a witness . . . ."

When the trial began, the deputy county attorney outlined to the court essentially undisputed facts concerning Goddard. These were that: Goddard lived in an isolated area close to the community of Maricopa in Pinal County; he was difficult to contact because he had no telephone; there had been several contacts with Goddard prior to the trial; he was contacted prior to the preliminary hearing in justice court, appeared, testified, and stated he would be available for trial; some time after the preliminary hearing in November 1975, he suffered either a stroke or a brain tumor, was hospitalized, and may have undergone surgery. (We note that *counsel for appellant* apparently became aware of this because, in his motion filed with the court on June 15, 1976, relating to another matter, it is stated on information and belief that Goddard would not be available as a witness in the trial because of "serious and disabling health problems.") The deputy county attorney further related to the court that after he learned of Goddard's disability, he and an investigator went to the Maricopa area and spoke with him to determine if he could testify. He found Goddard "pretty incapacitated." Nevertheless, he was subpoenaed to appear on several occasions but, because of continuances, no appearance became necessary. The deputy county attorney then explained that "Mr. Goddard's condition had become worse than it was" and that by the time the Pinal sheriff tried to serve the last subpoena Goddard had left the state to live with his mother in Colorado.

In support of the motion to use the transcript of Goddard's testimony, the State called Deputy Sheriff Art Poore to testify.

Poore was with the Sheriff's Office in Pinal County. He said the last time he had seen Goddard was four or five months prior. At that time Goddard was living at the residence of a John Torberg in the Maricopa area. Goddard was in bed when he saw him and when Poore told him he had papers to give him, he "didn't get any response whatsoever." Later, about a week before the trial, Poore again went to serve a subpoena on Goddard but could not locate him. He learned that Goddard had left and had been gone about two months. Torberg told Poore that Goddard was living in Colorado with his mother and that he had shipped some of his belongings to him. Torberg apparently had the address, although there is no indication Torberg had heard from Goddard.

The only additional testimony concerning Goddard relating to the issue of availability came from a defense witness, Leonard Lackey, who lived near Goddard in the Maricopa area. Although the purpose of Lackey's testimony was to discredit Goddard's testimony, he stated that he had seen Goddard about two months prior to the trial. He testified that Goddard had had an operation and "was completely paralyzed, and at this time, he don't have all his mental faculties. He is more or less an invalid."

The vital question, of course, is whether this showing, in its totality, is sufficient to sustain the trial court's determination that a sufficient effort was made by the State to make the witness available. *State v. Pereda*, 111 Ariz. 344, 529 P.2d 695 (1974).

In *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court held that a preliminary hearing transcript had been improperly admitted in a trial in Oklahoma where the witness was in custody in Texas. The court ruled that the prosecutor did not make a good faith effort to secure the witness because he had not utilized the procedure to obtain the attendance of out-of-state witnesses. The court further noted that the right to confrontation is basically a trial right. "It includes

both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." *Barber v. Page*, 390 U.S. at 725, 88 S.Ct. at 1322, 20 L.Ed.2d at 260.

In *State v. Alexander*, 108 Ariz. 556, 503 P.2d 777 (1972), our Supreme Court held that a good faith effort to produce a missing witness "must be proven by evidence consisting of, at the very least, a subpoena which has been duly issued and returned unsatisfied, and, more desirably, of the sworn testimony of the authorities charged with the duty of serving the subpoena and of the people having knowledge of the missing witness's habits and former whereabouts, of the witness's unavailability to appear in person." *State v. Alexander*, 108 Ariz. at 561, 503 P.2d at 782. The court noted in *Alexander* that no attempt was made to utilize the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, A.R.S. § 13–1861 *et seq.* (hereafter referred to as Uniform Act). The court stated that it was incumbent upon the trial court to require some proof by the state that the witness was truly unavailable to testify.

Appellant argues that the county attorney's failure to obtain Goddard's Colorado address and to utilize the Uniform Act should have barred the use of the preliminary hearing transcript.

At the outset, there is no indication that the county attorney failed to make efforts in good faith to procure Goddard as a witness for trial. This is not a case where the county attorney relied upon the perfunctory use of subpoenas alone which were returned unserved. Nor is it a case where the county attorney was unconcerned as to the location of the witness in the months prior to trial. To the contrary, the record indicates that the county attorney made considerable effort to assure Goddard's attendance.

The cases in Arizona suggest the use of the Uniform Act as a predicate to offering prior recorded testimony at trial. *See State v. Alexander, supra; State v. Ratzlaff*, 27 Ariz.App. 174, 552 P.2d 461 (1976). Nevertheless, we are aware of no case which absolutely requires the use of the Uniform Act before the prior testimony can be used. It is obvious that circumstances will occur where that will not be necessary, particularly where it is shown the witness is physically or mentally unable to testify. In our opinion this case involves such circumstances.

The burden was upon the county attorney to show Goddard was unavailable to testify. While not conclusive, a showing was made, supported by testimony under oath, that Goddard had recently suffered physical disability which required hospitalization following a serious illness. Five months prior to trial, he was in bed and not able to communicate. Two months before the trial, he was completely paralyzed and without full mental faculties. The trial court could reasonably infer that at the time of trial Goddard was incapacitated in Colorado and, therefore, unavailable as a witness. It is notable that there is no contrary evidence.

■ Appellant next argues that the preliminary hearing testimony of Goddard should not have been admitted in any event because he was denied his right to cross-examine the witness at the hearing. After extensive and repetitive cross-examination, the magistrate terminated the questioning. Appellant's attorney then handed the court a list of 119 written questions which he wished propounded to the witness. The court declined to require the witness to answer the questions. The issue was raised by a motion for a new determination of probable cause, which the trial court denied.

In order to determine whether the appellant was denied his right to confrontation, we must examine the record in its entirety. *State v. Galvan*, 108 Ariz. 212, 495 P.2d 442 (1972). "The decision that the testimony of an unavailable witness is fairly presented by appropriate direct and cross-examination is within the trial court's discretion. We

will interfere only when there is an abuse of that discretion." *State v. Galvan*, 108 Ariz. at 214, 495 P.2d at 444. A review of the cross-examination here reveals that there was extensive questioning relating to Goddard's memory of the incident surrounding the Cadillac; there was, in addition, extensive questioning relating to his ability to identify the appellant and the men who accompanied him to Goddard's home. The examination further revealed that Goddard did bodywork on automobiles and that, as a result of his affinity for "beautiful cars," he was able to recall that the Cadillac in question was a 1974 model with a dent in the side, probably caused by a tire, and that the trunk cover contained an antenna hole. Thus, the ability of the witness to perceive and remember details was more than adequately established and cross-examined at the preliminary hearing.

In *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court noted that in some instances there is justification for holding that cross-examination of a witness at a preliminary hearing satisfies the constitutional requirements relating to the right to confront witnesses when the witness is shown to be unavailable at trial. The court suggested that the transcript of the preliminary hearing would have been admissible if the witness had been unavailable at trial (the witness in that case did testify at trial) because at the time of the preliminary hearing the statements of the witness were "given under circumstances closely approximating those that surround the typical trial." *California v. Green*, 399 U.S. at 165, 90 S.Ct. at 1938, 26 L.Ed.2d at 501. The witness was under oath; the defendant was represented by counsel, the same counsel who represented him at trial; the counsel for the defendant had every opportunity to cross-examine the witness; and the proceedings were conducted before judicial tribunal which provided a record of the proceedings. All of the factors mentioned in *Green* which would have made the transcript admissible in the event of the unavailability of the witness are present in the instant case.

The appellant adequately confronted and cross-examined the witness on all matters material to the case. Accordingly, we conclude that the use of the transcript was not improper.

█ Finally, in regard to the use of the transcript at the time of trial, the appellant urges that the trial court erred in permitting the preliminary hearing identification of the appellant by Goddard to be introduced. Appellant argues that on the basis of *State v. Strickland*, 113 Ariz. 445, 556 P.2d 320 (1976), the one-man show up at the preliminary hearing may have been unduly suggestive. The appellant requested a pretrial identification hearing in accordance with the procedures set forth in *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). At the hearing the only witness who testified was Leonard Lackey, a former neighbor of Goddard and an acquaintance of appellant. Lackey stated that Goddard had indicated to him earlier that he was not sure that he could identify the appellant, that he was not sure that he remembered what the appellant looked like, and that he did not know who he was.

After reading the preliminary hearing transcript, the trial court held that the identification was not unduly suggestive and would be admitted. The appellant argues that the procedure utilized by the trial court in ruling on the identification issue violated his right to confrontation since he was unable to ascertain what portions of the transcript were used by the trial court in making its determination. He further argues that the procedure utilized by the court deprived him of an opportunity to object to portions of the transcript being considered.

We find these contentions lack merit. The portions of the transcript which were used by the trial court in making the *Dessureault* ruling were clearly those portions relating to the identification of the appellant by the witness. The attorneys were advised that the trial judge planned to read the transcript of the preliminary hearing for purposes of ruling on a number of mat-

ters, including the identification hearing. The appellant had ample opportunity to object to any portions of the transcript he thought should not be considered by the court.

We further fail to see how the appellant's right to confrontation was denied by the procedure utilized. We have previously ruled that the witness was more than adequately confronted at the preliminary hearing. At any identification hearing, it is unlikely that counsel will know exactly what portions of the testimony the court relies on for its ruling. Such rulings are based on the totality of the evidence presented to the court and the court's determination of the credibility of the witness.

We believe, moreover, that the one-man show up at the preliminary hearing was not unduly suggestive under the circumstances of this case. In Strickland, supra, the court carefully pointed out that identifications made for the first time at preliminary hearings are not necessarily suggestive. If, viewing the totality of the circumstances, the identification is reliable, it will be admitted. Goddard had ample opportunity to observe the appellant. The appellant was introduced to him as "Mr. Ray." Goddard remembered many other details surrounding his meeting with the appellant. He indicated that the appellant was driving a white 1973 Cadillac convertible. He described with specificity the appearance of the men who accompanied the appellant. He stated that he remembered the appellant as a man with a ruddy complexion and reddish hair. He described the stature of the appellant. The meeting between Goddard and the appellant occurred during the day when there was ample lighting. Finally, the witness described the appellant to the police prior to his testimony. We cannot, therefore, conclude that the identification of the appellant by the witness was unduly suggestive, nor can we conclude that admitting the identification was improper.

### ADMISSIBILITY OF THE STATEMENTS MADE BY APPELLANT

The State introduced testimony of Sgt. Warriner at trial relating to statements made by appellant to Warriner after his arrest. Appellant told Warriner that he had purchased the brown Cadillac at an auction held by the Valley National Bank. This statement conflicted with the statement he had given to another officer prior to his arrest which indicated that he had purchased the Cadillac in Pie Town, New Mexico. Appellant contends that the statement to Warriner should not have been admitted because it was the product of the illegal arrest of appellant. He urges that the illegal arrest stemmed from and was the fruit of the illegal search of the GMC pickup.

Appellant argues that the opening of the hood of the pickup was a search within the ambit of the fourth amendment of the United States Constitution. He further argues that the vehicle was located on private property and that, although there was ample time for the officers to obtain a search warrant, they did not do so. He states that the failure of the officers to secure a search warrant rendered the search illegal and the evidence obtained therefrom inadmissible.

He also argues that the informant's tips had not led to an arrest or a conviction in the past and that, therefore, the tests for reliability set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) were not met. Moreover, he argues that Rosemann did not have the authority to consent to the search and that, therefore, the search cannot be justified on the consent theory.

It is clear that the arrest did stem directly from the alleged search of the GMC pickup. Warriner testified that he had his men ready and waiting to arrest the defendant upon confirmation that the GMC pickup was stolen.

■ Lifting the hood of the GMC pickup truck was not a search when the officer had a legitimate reason to identify the automobile. In Cotton v. United States, 371 F.2d

385 (9th Cir. 1967), the court held that the opening of the door of a car which had been impounded by the police for purposes of identifying the car was not a search, and that, if it was a search, it was a reasonable one. The court there stated, "when a policeman or a federal agent having jurisdiction has reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car, he may open a door to check the serial number, or open the hood to check the motor number, and that he need not obtain a warrant before doing so in a case where the car is already otherwise lawfully available to him." *Cotton v. United States*, 371 F.2d at 394. In *Pasterchik v. United States*, 400 F.2d 696 (9th Cir. 1968), the court held that a warrantless opening of the hood of a Thunderbird car to obtain the identification number was reasonable. In *Pasterchik*, the officers had reason to believe that the Thunderbird was stolen. In *United States v. Baker*, 452 F.2d 21 (5th Cir. 1971), the court ruled that inspections of motor vehicles which were limited to determining the correct identification numbers were not searches within the meaning of the fourth amendment. In all three cases the courts indicate that the officer must have a legitimate reason to identify the automobile and that the officer must be lawfully on the property when he inspects it. In the instant case the officers certainly had a legitimate reason to attempt to identify the GMC pickup. They had information from an informant that the appellant was in possession of a stolen GMC pickup that matched the description of the pickup which was searched. They further had a teletype indicating that a vehicle matching the description of the GMC pickup had been stolen. Furthermore, the officers had a right to be on the property pursuant to the consent of Rosemann, the owner. Accordingly, the action of the officers in obtaining the vehicle identification number from the GMC pickup was not unreasonable and did not constitute an illegal search.

Appellant argues that in the event this court finds the search of the GMC pickup was lawful, the issue then shifts to deciding whether probable cause existed to believe appellant possessed the pickup and, therefore, whether probable cause existed for his arrest. A.R.S. § 13–1403 states that:

A peace officer may, without a warrant, arrest a person:

1. When he has probable cause to believe that a felony has been committed and probable cause to believe the person to be arrested has committed the felony.

The collective knowledge of the officers involved may be considered in determining whether there is probable cause. *State v. Miller*, 112 Ariz. 95, 537 P.2d 965 (1975); *State v. Million*, 120 Ariz. 10, 583 P.2d 897 (1978). "Probable cause exists if the arresting officer knows facts and circumstances sufficient to justify the belief of a reasonable and prudent man that a crime has been committed by the individual arrested." *State v. Miller*, 112 Ariz. at 97, 537 P.2d at 967. Probable cause to arrest may be based on an informant's tip when the informant is reliable and the circumstances underlying his information are stated. *Id.* Probable cause may also be present when the details of the information furnished by the informant unfold as forewarned by the informant and are corroborated by the personal observations of the police officer. *Id.* In this case, the informant told the police that the pickup truck was in appellant's lot adjacent to Rosemann's lot. He further told the police that appellant was driving a brown, late-model Cadillac with out-of-state plates which was stolen; that a truck-bed from a burglary of The Crystal Bottled Waters plant was in appellant's lot; and that the brown Cadillac with the Washington plates had been at "Bill's" house near Maricopa, referring to Goddard.

The informant drove with Warriner to appellant's lot and pointed out the stolen GMC pickup. He then accompanied Warriner to another lot used by appellant and pointed out the stolen truck-bed, and he also accompanied Warriner to Goddard's house in Maricopa.

Goddard stated that the Cadillac with the out-of-state plates had been at his home in 1975. Warriner verified that a truck-bed like the one seen in the second lot had been taken from The Crystal Bottled Waters plant. We believe under such circumstances the reliability of the informant was established by the personal observation of Warriner in corroborating all the matters related to him by the informant. All of the information which the police had at the time of the arrest indicated that the vehicle was possessed by the appellant. After confirming that the vehicle was stolen, the police had probable cause to believe that a crime was being committed and that the appellant was the person committing it. Accordingly, we hold that the arrest of the appellant was proper; that it was not the product of an unlawful search; that it was based on probable cause; and that the statements given to Warriner after the arrest were properly admitted into evidence.

## AMENDMENT OF THE INDICTMENT

■ Prior to trial, on motion of the State and over the objection of the appellant, the trial court amended the indictment to read that the crime occurred on July 22, 1975, rather than July 22, 1976, as charged in the indictment.

It is clear that in Arizona an indictment may be amended to correct mistakes of fact. 17 A.R.S., Rules of Criminal Procedure, Rule 13.5(b). The indictment was returned on May 20, 1976. It was patently clear to the appellant, therefore, that there was a mistake of fact in charging him with a crime committed on July 22, 1976. Appellant was arrested on July 22, 1975. Under the circumstances, he could easily infer that the intent of the grand jury was to charge him with having committed the offense on July 22, 1975. The ruling of the trial court was proper in amending the date in the indictment. *State v. Williams,* 108 Ariz. 382, 499 P.2d 97 (1972).

■ Appellant further argues that the trial court improperly "amended the indictment" when it instructed the jury on the law. The change in wording came about by

reason of the decision of this court in *State v. Ware,* 27 Ariz.App. 645, 557 P.2d 1077 (1976).

Specifically, in instructing the jury as to the elements of possession of a stolen motor vehicle, the trial court stated that one element to be proven was "that M. L. Ray had actual knowledge or a belief that the vehicle was stolen." The grand jury indictment, on the other hand, stated that M. L. Ray possessed a motor vehicle "which he knew or had reason to believe had been stolen." Appellant's argument here is that the indictment was based improperly on a standard of proof relating to a reasonable man rather than to M. L. Ray. His argument then continues that, by instructing the jury on the latter standard rather than the former, the trial court improperly amended the indictment. He argues that the trial court should have remanded the matter to the grand jury for proceedings in accordance with the "correct" standard, particularly since the vote to indict was ten to five, and a minimum of nine grand jury votes are necessary to return an indictment.

*State v. Ware, supra,* involved a conviction for the sale of stolen property in violation of A.R.S. § 13–621(A);. Since the language of this statute is similar to A.R.S. § 28–1423 which is involved here, the case bears directly upon the issue now discussed. In *Ware,* the appellant attacked the constitutionality of A.R.S. § 13–621(A) on the ground that the language imposing guilt by reason of a person "having reason to believe that the property is stolen" created an objective rather than a subjective standard of guilt. Ware argued that a defendant must *himself* be shown to have the belief and that it is not enough for the state to prove that a reasonable man under similar circumstances would have that belief. The court agreed. In doing so, it held that this has long been the law in Arizona by reason of *Reser v. State,* 27 Ariz. 43, 229 P. 936 (1924). The court then interpreted A.R.S. § 13–621(A) as incorporating the *Reser* holding. As interpreted, the statute was held constitutional. In affirming the conviction, the *Ware* court pointed out that no

instruction referring to a "reasonable man" standard was recited to the jury which might have misled it. The court thus found that the giving of an instruction reciting only the "reason to believe" language of the statute was not fundamental error. The case does not state what the result would have been had there been a defense objection to the giving of the instruction.

We conclude that there is nothing in the *Ware* case which renders invalid the grand jury indictment involved here. During the grand jury proceedings, A.R.S. § 28–1423 (now repealed by Laws 1975, Ch. 155, § 3) was read verbatim to the grand jury unaccompanied by a "reasonable man" instruction. The indictment returned by the grand jury correctly cited the language of the statute. We cannot presume, any more than the *Ware* court did, that the jurors applied a "reasonable man" standard to indict. To invalidate the indictment, we would need to say that the statute as written is unconstitutional. This argument was rejected by the *Ware* court and has not been argued here.

Thus, there is no fundamental defect in the grand jury proceedings which would invalidate the indictment. Although we have disagreed with appellant's contention on the merits, we note also that the claimed defect in the indictment relating to the *Ware* issue was not timely raised by appellant in accordance with 17 A.R.S., Rules of Criminal Procedure, Rule 13.5(c). It was only when the trial judge gave preliminary instructions to the jury at the trial that appellant urged remand for a new determination of probable cause. Under Rule 13.-5(c) this was too late.

### JURY INSTRUCTIONS

■ Having found no fundamental defect in the grand jury proceedings which would invalidate the indictment, we turn to the instruction given by the trial court earlier quoted.

Appellant asserts that the trial court erred in modifying his proposed instruction concerning the elements of the offense. Appellant proposed that the trial court instruct the jury that it was required to find that "M. L. Ray had actual knowledge and/or *actual* belief that the vehicle was stolen." The instruction as modified required the jury to find "that M. L. Ray had actual knowledge or a belief that the vehicle was stolen." The language contained in the instruction as given is taken from *State v. Ware, supra.*

The jury was also instructed that "mere possession of stolen property does not establish that the possessor had actual knowledge or belief that the property was stolen." We believe that the instructions as given were adequate. The jury could only conclude that one of the elements of the offense was that the appellant either had *to know* that the vehicle was stolen, or he had *to believe* that the vehicle was stolen. We are unable to attach any significance to elimination of the word "actual" as a modifier to the word "belief." Either way, it means the same thing. The instruction as given was correct.

### SUFFICIENCY OF THE EVIDENCE

■ Appellant contends that the evidence was insufficient to support the verdict. We disagree. Before the jury, the State proved that the car had been stolen from Charles Kerr. The fact that he was the lessee of the car and not the owner does not alter its character as stolen property. Officer John Locarni indicated that appellant was in possession of the car and recounted appellant's statement that he had bought the car in Pie Town, New Mexico. Goddard's testimony indicated appellant's presence and involvement in the pick up of the car at Goddard's residence near Maricopa. The testimony of Luke Jernigan, defense witness, was to the effect that appellant bought the car from someone he met at a Valley National Bank repossession sale in Phoenix. Knowledge that the car was stolen property can be proven by circumstantial evidence. *State v. Gaines*, 113 Ariz. 206, 549 P.2d 574 (1976). The evidence was sufficient here to uphold the jury verdict.

For the reasons stated, we find no reversible error and the judgment and conviction are affirmed.

HAIRE, P. J., Department A., and DONOFRIO, J., concur.