593 P.2d 940

**STATE of Arizona, Appellee,**

v.

**Ruben FIGUEROA, Appellant.**

**No. 1 CA–CR 3275.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 22, 1979.

Rehearing Denied April 6, 1979.

Review Denied April 24, 1979.

John A. LaSota, Jr., former Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Gregory A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

## OPINION

SCHROEDER, Presiding Judge.

Appellant, Ruben Figueroa, was convicted of involuntary manslaughter in the homicide of his six-week-old daughter, Starlet Figueroa. Sentence was suspended and appellant was placed on probation for ten years on certain terms and conditions, including the condition that he spend a year in the County Jail. The issues on appeal are whether the court erred in compelling appellant's wife to testify against him, whether the jury was properly instructed on criminal negligence, and whether the conviction was supported by substantial evidence.

The facts taken in a light most favorable to sustaining the conviction are as follows:

Early in the morning of February 20, 1977, appellant's wife, Cathy Figueroa, went to the living room to comfort the crying child, left the baby sleeping on the living room couch and returned to bed. When the crying resumed the appellant went to the living room. Mrs. Figueroa followed her husband and noticed that the baby's head had been covered with a blanket and placed face down in a pillow propped in the corner of the couch. Appellant had apparently done this on several prior occasions in an effort to muffle the sound of the baby's crying. He told the police that he couldn't stand the baby's crying which made him nervous. As the baby began to whimper and gasp for air Mrs. Figueroa's efforts to assist the child were thwarted by the appellant who swatted her away.

Later that morning, about 8:15 a. m., appellant and his wife awoke and went to check on the baby. The child was still lying with her face pressed into the pillow but had stopped breathing.

Mrs. Figueroa administered mouth-to-mouth resuscitation. They carried the child to the apartment manager's apartment, and called the fire department. The child was pronounced dead at the Maricopa County Hospital.

When the State called the appellant's wife to testify at trial she told the court that she preferred not to testify. The court granted the State's request that she be given immunity and ordered her to testify.

The first issue on appeal is whether the court erred in ordering her to testify over the appellant's and her own objection. Husband and wife testimonial disqualifications and privileges are established in criminal cases in A.R.S. § 13–4062, formerly A.R.S. § 13–1802.

A person shall not be examined as a witness in the following cases:

1. A husband for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, be, without consent of the other, examined as to any communication made by one to the other during the marriage. These exceptions do not apply in a criminal action or proceeding for a crime committed by the husband against the wife, or by the wife against the husband, nor in a criminal action or proceeding against the husband for abandonment, failure to support or provide for or failure or neglect to furnish the necessities of life to the wife or the minor children. Either spouse may, at his or her request, but not otherwise, be examined as a witness for or against the other in a prosecution for bigamy or adultery, committed by either spouse, or for rape, seduction, the crime against nature or any similar offense, committed by the husband.

The first clause of the first sentence of paragraph "1", establishes a spousal disqualification and the second clause of the same sentence sets forth a marital communications privilege. However, the second sentence of the paragraph removes any disability or privilege in criminal proceedings for crimes by one spouse against the other or for criminal abandonment or neglect proceedings. Similar exceptions were recog-

nized at common law and have been adopted, with some variations in specificity, in virtually all common law jurisdictions. The exceptions generally encompass crimes against the person, property or children of the spouse. *See* McCormick on Evidence, §§ 66, 78, 84 (2d ed. 1972). The statutes are compiled in 2 Wigmore on Evidence, § 488 (3d ed. 1940). *See also* 8 Wigmore on Evidence, §§ 2239, 2332, 2333 (McNaughton rev. 1961). Wigmore is critical of limitations on spousal testimony and urges a broad interpretation of the exceptions. McCormick is also critical of restrictions on the testimonial capacity of spouses on the ground that they reflect an archaic view of the marital relationship. McCormick, § 66.

Appellant suggests that this is not a "crime against the wife" within the meaning of the language in the second sentence of the statute, and therefore a privilege remains. Any doubts on this score have been resolved against the appellant by the decision of our Supreme Court in *State v. Crow,* 104 Ariz. 579, 457 P.2d 256 (1969), which held that in a prosecution for the murder of the wife's father and brother, the crime was "against the wife" and that the defendant-husband could not prevent the wife's testimony. While appellant attempts to distinguish *Crow* because the spouses there were separated, the opinion does not turn on that point but rather upon the court's view that a crime against the wife's family is a crime against the wife. The instant case is an even more compelling one, for the victim was the child of the marriage and the statute expressly provides that the wife should testify in cases of child neglect. It would be anomalous indeed to prevent her testimony in a case of a child's death. Removal of a disqualification or privilege in prosecution for such crimes is supported by the *Crow* decision itself and authorities cited therein. *E. g., O'Loughlin v. People,* 90 Colo. 368, 10 P.2d 543 (1932).

Appellant also urges that in some fashion the wife herself had a privilege to refuse to testify in the case, and that therefore the court erred in ordering the testimony over her objection. There is no statutory authority for that position. The final sentence of the statute in question does provide a limited privilege for the wife to refuse to testify in certain sex related cases. This is not, however, such a case.[1]

We therefore hold that the trial court properly ordered the appellant's wife to testify in a criminal prosecution of her husband for the death of their child.

■ The second issue is whether the court properly instructed the jury on the *mens rea* element of involuntary manslaughter. The court instructed the jury as follows:

Involuntary manslaughter is an intentional killing—excuse me. Involuntary manslaughter is an unintentional killing, and has two elements: one, the defendant must act with criminal negligence in a way which might cause death, and, two, the defendant's criminally negligent act must cause the victim's death.

Criminal negligence is gross negligence. In order to find criminal or gross negligence, the negligence must be aggravated, culpable, gross, or reckless. That is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or in other words, a disregard for human life or an indifference to consequences.

Appellant argues that this instruction improperly injected an "objective standard of conduct" into criminal law because it directed the jury to convict him if his conduct appeared to have been incompatible with what a reasonable man would do. He relies

1. The leading case construing the predecessor of the present provision further indicates that the limited privilege is "a personal one to the wife witness" and any misapplication by the trial court is "not a matter of which the defendant can complain." *Zumwalt v. State,* 16 Ariz. 82, 141 P. 710 (1914). In a more recent case, applying the privilege in a child molestation case, the appellate court granted relief by a special action in which the wife herself was a petitioning party. *Pazos v. Superior Court,* 8 Ariz.App. 560, 448 P.2d 130 (1968).

upon *State v. Ware,* 27 Ariz.App. 645, 557 P.2d 1077 (1976), which construed the receiving stolen property statute. A.R.S. § 13–621(A), as requiring actual knowledge or belief that the goods were stolen rather than a "reasonable man" approach. We disagree with appellant's contention that the decision in *Ware* requires disapproval of the instruction given in this case.

The statute defining involuntary manslaughter itself sets up a criminal negligence standard, proscribing the killing of another "without due caution and circumspection." A.R.S. § 13–456(A)(2). The statute conforms with the basic requirements for criminal responsibility set forth in A.R.S. § 13–131 that "[i]n every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence." The court's definition for the jury of the concept of criminal negligence was taken from *State v. Sorensen,* 104 Ariz. 503, 455 P.2d 981 (1969). The description of negligence is hardly that of ordinary civil negligence. The negligence must be "aggravated, culpable, gross, or reckless." *People v. Penny,* 44 Cal.2d 861, 285 P.2d 926 (1955), *quoted with approval in Sorensen.* Thus there is no danger that the law of involuntary manslaughter incorporates ordinary notions of civil liability into the criminal law. Appellant's argument would require us not only to overrule an express holding of the Supreme Court of Arizona, but also to subvert the clear legislative intent that criminal negligence suffice for the imposition of criminal liability for involuntary manslaughter.

The final argument is that there was insufficient evidence to sustain a conviction for involuntary manslaughter. On appeal our concern is whether there is substantial evidence to support the verdict. *State v. Childs,* 113 Ariz. 318, 553 P.2d 1192 (1976). Evidence is not insubstantial merely because there is conflicting testimony or reasonable persons could draw different conclusions from the evidence. *State v. Ballinger,* 110 Ariz. 422, 520 P.2d 294 (1974). The facts must be viewed in the light most favorable to upholding the verdict, *State v.* *Trotter,* 110 Ariz. 61, 514 P.2d 1249 (1973), and all reasonable inferences must be resolved against the appellant. *State v. Bearden,* 99 Ariz. 1, 405 P.2d 885 (1965).

The most notable feature of the testimony below was that Mrs. Figueroa and appellant tended to give a sanitized view of his actions on the morning in question. However, the statements which Mrs. Figueroa made to the police at the hospital, including the fact that appellant had placed the baby's head in a pillow and then placed a blanket over the baby's head, that the child began to whimper and gasp for air and that appellant had swatted her away to prevent her from rescuing the baby, all pointed to the existence of gross and culpable negligence. These facts support a conviction of involuntary manslaughter. *State v. Beers,* 8 Ariz.App. 534, 448 P.2d 104 (1968).

Affirmed.

OGG, C. J., Division 1, and JACOBSON, J., concur.